**STATE of Vermont v. Matthew S. TROMBLEY**

[807 A.2d 400]

No. 01-128

July 2, 2002. Defendant Matthew Trombley appeals his aggravated assault conviction, claiming several errors in the court's jury instructions. Defendant contends that (1) the court improperly instructed the jury to consider whether defendant acted either "purposely" or "knowingly" when defendant was charged with only "purposely" inflicting serious bodily harm, (2) the court failed to instruct the jury that it should consider evidence of defendant's fear and emotions in deciding whether defendant acted purposely, and (3) the court's instructions on self-defense were so misleading that the jury rejected defendant's claim of self-defense. We affirm.

The incident occurred the evening of February 18, 2000, when George Demarais and Matthew Trombley, the defendant, were involved in a fight. Various details of the fight are in dispute.

The two men were at a bar in St. Albans. Both had been drinking. Demarais testified that he had been sitting at the bar with some friends when defendant, whom he did not know, approached him from behind, put him in a headlock, pushed him forward, and punched him several times in the face. Bystanders pulled defendant off Demarais, and shortly thereafter, Demarais left the bar. Defendant testified that he had approached Demarais at the bar because Demarais had been staring at him and he wanted to find out why. He contends a brief struggle then ensued. According to defendant, after Demarais left the bar, defendant noticed that his hand had been cut and he decided to go after Demarais to "talk to him" about what Demarais had done.

The testimony differs as to what happened outside of the bar on Main Street once defendant and Demarais had left the bar. According to Demarais, who was walking away from the bar, defendant grabbed him from behind and punched him at least twelve times before Demarais fell to the ground and started to lose consciousness. Demarais testified that in an effort to defend himself he pulled out a small knife and blindly slashed at defendant over his shoulder. After delivering a few more punches, defendant stopped punching Demarais. According to defendant, he saw Demarais walking down the street, hollered at him to stop, ran towards him, and tackled him. They fell to the ground. After some struggle, defendant felt a pain in his side and became scared and angry. He testified he repeatedly punched Demarais in an effort to get Demarais to stop stabbing him.

Both individuals suffered injuries. Demarais suffered a bruised face. His eyes were swollen shut and he experienced a partial loss of vision. One tooth had been knocked out, and another was

hanging by a thread. Defendant suffered multiple stab wounds to his face, the back of his scalp, his neck, hand and chest. The stab wounds were all superficial.

Defendant was charged with aggravated assault under 13 V.S.A. § 1024(a)(1). The charge read: "[defendant] was then and there a person who purposely caused serious bodily injury to another, to wit: George Demarais, by knocking some teeth out by repeatedly punching Mr. Demarais in violation of 13 V.S.A. § 1024(a)(1)." The jury convicted defendant of aggravated assault. Defendant appeals the jury verdict of guilty, claiming that the court's instructions to the jury were erroneous. Defendant properly preserved his objections to all of the pertinent jury instructions.

"In reviewing jury instructions, the relevant inquiry is whether the instructions as a whole were misleading or inadequate to aid the jury's deliberations." *State v. Shabazz*, 169 Vt. 448, 450, 739 A.2d 666, 667 (1999). "If the charge as a whole breathes the true spirit and doctrine of the law, and there is no fair ground to say that the jury has been misled by it, it ought to stand." *Harris v. Carbonneau*, 165 Vt. 433, 438, 685 A.2d 296, 300 (1996) (internal quotation marks and citations omitted). We will assign error only where the instructions undermine our confidence in the verdict. *Shabazz*, 169 Vt. at 450, 739 A.2d at 667.

Defendant first argues that the jury charge was improper because it instructed the jury to consider whether defendant acted either "purposely" *or* "knowingly" when defendant was charged with only "purposely" inflicting serious bodily harm. The trial court judge instructed the jury as follows: "To commit the offense purposely means that [defendant] acted with the conscious purpose of causing serious bodily injury *or* that he acted under circumstances where he was practically certain that his conduct would cause serious bodily injury." Defendant argues that because the

information charged defendant with only "purposely" causing serious bodily injury, the additional charge regarding whether he acted knowingly allowed the jury to improperly consider and weigh evidence going to whether the defendant acted under circumstances where he was practically certain his conduct would cause serious bodily injury. Defendant argues that a proper jury instruction would have told the jury that to convict defendant it had to find that it was defendant's conscious objective to inflict serious bodily injury on Demarais; if defendant only acted under circumstances where he was practically certain his conduct would result in serious bodily injury to Demarais, the jury could not convict him.

Criminal liability is normally based upon the concurrence of two factors: "an evil-meaning mind" and "an evil-doing hand." *Morissette v. United States*, 342 U.S. 246, 251 (1952). We recognize that one of criminal law's most basic principles is that "a person is not criminally liable for causing a bad result if he or she did not have some culpable mental state with respect to that result." *State v. Doucette*, 143 Vt. 573, 580, 470 A.2d 676, 681 (1983). In the instant case, we must examine the mental element, or mens rea, required for conviction under § 1024(a)(1). If the jury instructions failed to charge the proper mental state required for a conviction under aggravated assault, we would find error.

At common law, crimes generally were classified as requiring either "general intent" or "specific intent." This distinction, however, has been the source of much confusion, and in the 1970's a reform movement of sorts began to replace this traditional dichotomy with an alternative analysis of mens rea. The American Law Institute's Model Penal Code exemplifies this new approach. The Code delineates four kinds of culpability: purposely, knowingly, recklessly, and negligently. Model Penal Code § 2.02(2)(a)-(d)

(1985).[1] In doing so, it abandoned the "specific intent" — "general intent" terminology prevalent in traditional criminal law. W. LaFave, *Criminal Law* § 3.5(e) (2000).[2]

---

[1] The two kinds of culpability pertinent to this case are "purposely" and "knowingly." The Model Penal Code, § 2.02(2)(a) states that a person acts

> *purposely* with respect to a material element of an offense when:

> (i) if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result; and (ii) if the element involves the attendant circumstances, he is aware of the existence of such circumstances or he believes or hopes that they exist.

Model Penal Code § 2.02(2)(b) states that a person acts

> *knowingly* with respect to a material element of an offense when: (i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and (ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

[2] Although the Code abandoned the "specific intent" and "general intent" terminology, we still find the terms useful, and not without importance in our criminal law. W. LaFave, *Criminal Law* § 3.5(e) (2000) (explaining that the traditional view is that rules on when mistake of fact

In Act No. 222 of the 1971 Adjourned Session, the Vermont General Assembly enacted 13 V.S.A. § 1024(a)(1), which states that a person is guilty of aggravated assault if he attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life. This language is borrowed from the Model Penal Code. *State v. D'Amico*, 136 Vt. 153, 155, 385 A.2d 1082, 1084 (1978) (citing Model Penal Code §§ 211.0-211.2 (1962)). We have noted that although the rationale of the Code is not binding on this Court, it is indicative of what the General Assembly intended in adopting the legislation modeled on the Code. *Id.* at 155, 385 A.2d at 1084.[3]

---

or mistake of law will constitute a defense differ depending on what kind of intent is involved); see also *State v. Kinney*, 171 Vt. 239, 243, 762 A.2d 833, 837 (2000) (holding that "[w]hen specific intent is an element of a crime, evidence of either voluntary or involuntary intoxication may be introduced to show that the defendant could not have formed the necessary intent").

[3] Although the Vermont General Assembly adopted the Model Penal Code language for aggravated assault, we do not find the characterization of aggravated assault as a "specific intent" crime, *State v. Kennison*, 149 Vt. 643, 651, 546 A.2d 190, 195 (1987), to be inconsistent with the legislative scheme. This Court has consistently held that aggravated assault involves a higher degree of culpability than mere reckless conduct, *State v. Bolio*, 159 Vt. 250, 252-53, 617 A.2d 885, 886 (1992) (citing *State v. Sargent*, 156 Vt. 463, 466, 594 A.2d 401, 402-03 (1991)), and that to "purposely" or "knowingly" cause harm is to form a degree of intent to harm that is greater than to "consciously disregard" the risk that harm may result from the conduct. *Id.* at 253,

Defendant argues that since the Legislature adopted the Model Penal Code language, which makes a distinction between "purposely" and "knowingly," and because he was charged with only "purposely" causing serious bodily injury, it was erroneous to instruct the jury on the mens rea of "knowingly." We agree.

The modern approach under the Code defines separately the mental states of "purpose" and "knowledge," because there are several areas of the law where it may be critical to distinguish between one's objective and one's knowledge. W. LaFave, *supra*, § 3.5(b). For example, when a defendant is charged with treason, the government must demonstrate that the defendant acted with a purpose or objective to aid the enemy. *United States v. Bailey*, 444 U.S. 394, 405 (1980). In addition, a heightened mental state in the inchoate offenses of attempt and conspiracy "separates criminality itself from otherwise innocuous behavior." *Id.* (citing Model Penal Code § 2.02, Comments, p. 125 (Tent. Draft No. 4, 1955)). Finally, "the statutory and common law of homicide often distinguishes, either in setting the 'degree' of the crime or in imposing punishment, between a person who knows that another person will be killed as a result of his conduct and a person who acts with the specific purpose of taking another's life." *Bailey*, 444 U.S. at 405. We too conclude that it is important to distinguish between a person who knows another may be seriously injured because of his conduct and a person who acts with the specific purpose of seriously injuring another.

---

617 A.2d at 887. As we have noted, "[i]t is evident to us that the Code concept of purpose and knowledge corresponds to the common law concept of specific intent . . . . Both of these concepts import a conscious intent or design to act as charged." *D'Amico*, 136 Vt. at 156, 385 A.2d at 1084.

Because the defendant was charged with only "purposely" causing serious bodily injury, the trial court's instruction on the mens rea of "knowingly" was erroneous. We find, however, that beyond a reasonable doubt that error was harmless. See *State v. Carter*, 164 Vt. 545, 553, 674 A.2d 1258, 1264 (1996) (Constitutional and nonconstitutional errors may be found harmless only if the appellate court can state "a belief that it was harmless beyond a reasonable doubt.").

Defendant posits that his conscious objective was not to inflict serious bodily injury, but rather to defend himself against Demaris's knife attack and that the jury instruction on knowingly prevented the jury from considering only this conscious objective. Defendant's argument is premised on the notion that when considering whether defendant had formed the conscious objective to inflict serious bodily injury on Demarais, the jury may also consider defendant's justification for inflicting serious bodily injury. Defendant's attempt to infect the jury's deliberation on his mens rea with consideration of his possible self-defense justification is misplaced. Properly argued, self-defense stipulates that while defendant indeed committed the act, he was nevertheless justified in defending himself, and is not, therefore, guilty of any crime. W. LaFave, *supra*, § 5.7. Defendant bears the burden of producing evidence of his justification. 2 P. Robinson, Criminal Law Defenses § 132, at 99 (1984). Defendant's mens rea is not properly considered along with defendant's possible justification for defending himself.

The trial court's inclusion of "knowingly" in the jury instructions was harmless error in the instant case because defendant's own assertion of self-defense established that he acted with the purpose of inflicting serious bodily injury on Demarais. Assuming defendant's only motivation for punching Demarais was to defend himself against Demarais's at-

tack, it was still his primary conscious objective to inflict serious bodily injury in order to achieve that goal. Given that there was a separate jury charge on defendant's claim of self-defense, the jury was properly afforded the opportunity to consider any justification for defendant's actions. While defendant appropriately raises a question as to whether the court erred in failing to distinguish between "purposely" and "knowingly," we do not find defendant's rationale — that this error precluded the jury's consideration of any self-defense justification — persuasive.

Defendant next argues that the court erred in failing to instruct the jury that when deciding whether defendant acted purposely it should consider evidence of his fear and emotions. Defendant alleges that the court should have given a "diminished capacity" instruction to the jury, instructing them to consider evidence regarding his fear and emotions because it is relevant in deciding whether or not defendant had the requisite state of mind required for the crime. *State v. Smith*, 136 Vt. 520, 527-28, 396 A.2d 126, 130 (1978). We have found that where the evidence supports it, the trial court should carefully review a request to charge the jury on diminished capacity in relation to the state of mind element of a crime. *State v. Duford*, 163 Vt. 630, 630, 660 A.2d 736, 737 (1995) (mem.). We conclude that the trial court was correct in refusing to include the diminished capacity charge to the jury because there was insufficient evidence to justify the charge.[4] The testimony of the emergency medical technician and the bartender were insufficient to establish defendant's diminished capacity. They testified that after the attack, back in the bar, defendant seemed anxious and scared. Such testimony does not create a question of fact regarding defendant's capacity to form the requisite intent to commit the aggravated assault that took place on Main Street. Indeed, defendant's own testimony indicates he was acting with full mental capabilities during the fight on Main Street:

> I tried to get on top of him to take control of the whole situation . . . I tried to get his hands to where I could see them and stop him from moving with my knees . . . I just kind of looked at him and said leave me alone and I figured he wasn't going to come after me no more.

Defendant also admitted on cross-examination that he knew what he was doing "to a certain extent." He knew that he was hitting Demarais hard and that his hand was swinging voluntarily. As the trial court acknowledged, defendant was asking the court "to give a diminished capacity instruction on [defendant's] behalf, when [defendant] himself says that his capacity wasn't diminished." Since the evidence did not fairly present diminished capacity, the trial court was not required to give the jury that instruction. *Duford*, 163 Vt. at 631, 660 A.2d at 737. Accordingly, we find no error.

Defendant's last claim is that the self-defense instruction had the tendency to confuse and mislead the jury into rejecting his theory of self-defense by allowing them to consider the reasonableness of his pursuit of Demarais from the bar rather than focusing their deliberations

---

[4] The court did, however, find that there was evidence of intoxication and instructed the jury that it could consider such evidence and whether it served to negate the requisite criminal intent. See *Kinney*, 171 Vt. at 243, 762 A.2d at 837 (where there is evidence of intoxication such as to negate the requisite criminal intent, the court should normally instruct the jury that it may consider the intoxication evidence as bearing on intent).

solely on the reasonableness of the defense against the knife attack on Main Street. In other words, defendant argues that if the jury found he was acting unreasonably in pursuing Demarais from the bar, they might reject his claim that he was acting in lawful self-defense on Main Street.

The court instructed the jury:

[A]n aggressor, — that is, the person who starts the fight — is generally not entitled to raise the defense of self-defense. There is an exception to this rule. That exception applies when the aggressor starts the fight using only nondeadly force, and is then met with unjustified deadly force. In this situation, the aggressor may reasonably defend himself against the unjustified deadly force. This is so because the person using unjustified deadly force is using excessive force and is therefore acting unlawfully. However, deadly force is not unjustified or unlawful if it is reasonably necessary to protect a person from death or serious bodily injury.

In determining whether [defendant] acted in lawful self-defense you must determine whether a reasonable person in his situation would have acted as he did under the circumstances of the situation as defendant understood them. In making this determination, you may consider all of the evidence in the case, including evidence of defendant's fear, excitement, nervousness, and surprise.

We find that the court's instructions were a correct statement of law and did not mislead the jury. Defendant's entire argument at trial focused on his right to self-defense once he was stabbed in the confrontation on Main Street. The reasonableness of the pursuit of the victim was not an issue before the jury, as there was no dispute that defendant pursued the victim with the intention of confronting him. In addition, the trial court's instructions clearly focused the jury on the altercation on Main Street. The instructions started with the charge of knocking Demarais's teeth out and then discussed how the aggressor in a conflict could claim self-defense when met with deadly force. The instructions focused the jury on the relevant time frame and made it clear to the jury that if they found defendant was not acting reasonably during the altercation on Main Street, as opposed to during the pursuit, then he was not acting lawfully in self-defense.

*Affirmed.*