State v. Jackowski (2004-455)

2006 VT 119

[Filed 22-Nov-2006]


 NOTICE: This opinion is subject to motions for reargument under
 V.R.A.P. 40 as well as formal revision before publication in the Vermont
 Reports. Readers are requested to notify the Reporter of Decisions,
 Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801 of
 any errors in order that corrections may be made before this opinion goes
 to press.


 2006 VT 119

 No. 2004-455


 State of Vermont Supreme Court

 On Appeal from
 v. District Court of Vermont,
 Unit No. 2, Bennington Circuit

 Rose Marie Jackowski September Term, 2005


 David T. Suntag, J.

 William D. Wright, Bennington County State's Attorney, and Daniel M.
 McManus, Deputy State's Attorney, Bennington, for Plaintiff-Appellee.

 Stephen L. Saltonstall of Barr Sternberg Moss Lawrence Silver Saltonstall &
 Scanlon, P.C., Bennington, for Defendant-Appellant.


 PRESENT: Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.

 ¶ 1. JOHNSON, J. Defendant Rosemarie Jackowski appeals her
 conviction for disorderly conduct. Defendant argues that the trial court
 improperly instructed the jury to consider whether defendant was
 "practically certain" that her conduct would cause public inconvenience or
 annoyance, when she was charged with intentionally causing public
 inconvenience or annoyance. Defendant also contends that the trial court
 erred in excluding from evidence the protest sign she was carrying at the
 time of her arrest. We reverse and remand.
 
 ¶ 2. Defendant was arrested on March 20, 2003, during an anti-war
 demonstration at the intersection of Routes 7 and 9 in Bennington. During
 the demonstration, protesters blocked traffic at the intersection for
 approximately fifteen minutes. Defendant stood in the intersection,
 praying and holding a sign bearing anti-war slogans and newspaper
 clippings, including an article accompanied by a photograph of a wounded
 Iraqi child. Police officers repeatedly asked defendant to leave the
 intersection, and when she refused, she was arrested, along with eleven
 other protesters. The State charged them with disorderly conduct, alleging
 that defendant and the other protesters, "with intent to cause public
 inconvenience and annoyance, obstructed vehicular traffic, in violation of
 13 V.S.A. § 1026(5)."

 ¶ 3. Defendant's intent was the only issue contested during her
 one-day jury trial. After several police officers testified for the State,
 defendant took the stand, admitting to blocking traffic, but stating that
 her only intention in doing so was to protest the war in Iraq, not to cause
 public inconvenience or annoyance. In response to the State's motion in
 limine to exclude defendant's protest sign, the trial court allowed
 defendant to display the sign to the jury and demonstrate how she was
 carrying it, but refused to admit it into evidence and allow it into the
 jury room. At the conclusion of the trial, the court instructed the jury
 on the issue of intent. The court first instructed the jury that the State
 could establish defendant's intent to cause public inconvenience or
 annoyance by proving beyond a reasonable doubt that she acted "with the
 conscious object of bothering, disturbing, irritating, or harassing some
 other person or persons." The court then added, "This intent may also be
 shown if the State proves beyond a reasonable doubt that the defendant was
 practically certain that another person or persons . . . would be bothered,
 disturbed, irritated, or harassed." The jury convicted defendant of
 disorderly conduct. Defendant appeals.
 
 ¶ 4. Defendant first argues that the jury charge was improper
 because the trial court failed to instruct the jury to consider whether
 defendant acted with the requisite criminal intent. "In reviewing jury
 instructions, the relevant inquiry is whether the instructions as a whole
 were misleading or inadequate to aid the jury's deliberations." State v.
 Shabazz, 169 Vt. 448, 450, 739 A.2d 666, 667 (1999). A jury charge will be
 upheld "[i]f the charge as a whole breathes the true spirit and doctrine of
 the law, and there is no fair ground to say that the jury has been misled
 by it." Harris v. Carbonneau, 165 Vt. 433, 438, 685 A.2d 296, 300 (1996)
 (internal quotation marks and citations omitted). The charge will stand
 unless it undermines our confidence in the verdict. Shabazz, 169 Vt. at
 450, 739 A.2d at 667.

 ¶ 5. Defendant relies on State v. Trombley to draw a distinction
 between offenses that require purposeful or intentional misconduct and
 those that require only knowing misconduct. 174 Vt. 459, 462, 807 A.2d
 400, 404-05 (2002) (mem.). In Trombley, we held that it was error for the
 trial court to instruct the jury to consider whether the defendant in an
 aggravated assault case acted "knowingly" or "purposely," when he was
 charged with "purposely" causing serious bodily injury. Id. The
 aggravated assault statute in Trombley, 13 V.S.A. § 1024(a)(1), had been
 amended in 1972 to adopt the Model Penal Code's approach to mens rea, which
 distinguishes among crimes that are committed "purposely," "knowingly," and
 "recklessly." Id. at 461, 807 A.2d at 404. Under this approach, a person
 acts "purposely" when "it is his conscious object to engage in conduct of
 that nature or to cause such a result." MPC § 2.02(2)(a)(i). A person
 acts "knowingly" when "he is aware that it is practically certain that his
 conduct will cause such a result." MPC § 2.02(2)(b)(ii). While the Code's
 provisions are not binding on this Court, they are "indicative of what the
 General Assembly intended in adopting the legislation modeled on the Code." 
 Trombley, 174 Vt. at 461, 807 A.2d at 404. Thus, the trial court in
 Trombley erred in instructing the jury that it could find that the
 defendant acted "purposely" if "he was practically certain that his conduct
 would cause serious bodily injury." Id. at 460, 807 A.2d at 403. 

 ¶ 6. Defendant argues that Trombley controls here, as the trial
 court used a similarly worded jury charge, and the disorderly conduct
 statute was amended at the same time, and for the same reasons, as the
 aggravated assault statute in Trombley. (FN1) The State attempts to
 distinguish Trombley based on differences in the language of the aggravated
 assault and disorderly conduct statutes. Unlike the aggravated assault
 statute, the disorderly conduct statute contains the words "with intent"
 and not "purposely." Compare 13 V.S.A. § 1026 (establishing mens rea for
 disorderly conduct as "with intent to cause public inconvenience, or
 annoyance or recklessly creating a risk thereof") with 13 V.S.A. §
 1024(a)(1) (listing "purposely," "knowingly," and "recklessly" as culpable
 states of mind for aggravated assault). This is a purely semantic
 distinction, and it does not indicate a departure from the Code's approach
 to mens rea, the adoption of which was "the major statutory change"
 accomplished by the Legislature's 1972 amendments. Read, 165 Vt. at 147,
 687 A.2d at 948. The Code does not differentiate between "with intent" and
 "purposely"; instead, it uses the two terms interchangeably, explaining in
 its definitions that " 'intentionally' or 'with intent' means purposely." 
 MPC § 1.13(12). There is no indication that the Legislature used the
 phrase "with intent" to register disagreement with the Code's approach to
 disorderly conduct, and such disagreement seems unlikely in the context of
 an otherwise unqualified adoption of the Code's approach. 
 
 ¶ 7. The State cites several cases supporting the proposition that
 both "purposely" and "knowingly" causing harm involve some element of
 "intent," and thus, that Trombley's distinction between "purposely" and
 "knowingly" is illusory. See State v. LaClair, 161 Vt. 585, 587, 635 A.2d
 1202, 1204 (1993) (mem.) ("When one causes harm 'purposely' or 'knowingly,'
 the person possesses some degree of an intent to harm."); State v. Patch,
 145 Vt. 344, 352, 488 A.2d 755, 760 (1985) ("A specific intent crime
 includes 'as an essential mental element that the act be done purposefully
 or knowingly.' ") (quoting State v. D'Amico, 136 Vt. 153, 156, 385 A.2d
 1082, 1084 (1978)). The State also identifies cases approving of
 "practically certain" instructions in aggravated assault trials. See State
 v. Pratt, 147 Vt. 116, 118, 513 A.2d 606, 607 (1986) (holding that
 "practically certain" instruction was proper despite lack of actual injury
 to victim); State v. Blakeney, 137 Vt. 495, 501, 408 A.2d 636, 640 (1979)
 (stating that specific intent was shown where the defendant was
 "practically certain that his conduct would cause serious bodily injury"). 
 Each of these cases predates our decision in Trombley, however, and each
 adheres to an outmoded distinction between "specific intent" and "general
 intent" crimes-the distinction that the Legislature rejected in adopting
 the Code's approach to mens rea. See Trombley, 174 Vt. at 460-61, 807 A.2d
 at 403-04 (linking the Legislature's adoption of the Code's approach to
 mens rea to the demise of the common-law distinction between general and
 specific intent offenses). At common law, crimes committed "purposely" and
 those committed "knowingly" would both have been specific intent offenses. 
 Id. at 461 n.3, 807 A.2d at 404 n.3. In the cases the State cites, the
 defendants did not raise the question of statutory construction at issue in
 Trombley, so this Court had no opportunity to effectuate the Legislature's
 adoption of a more modern approach to mens rea. See LaClair, 161 Vt. at
 585-87, 635 A.2d at 1203-04 (approving of jury instruction and affirming
 conviction of defendant where State never charged defendant with
 "purposely" causing serious bodily injury); Pratt, 147 Vt. at 118, 513 A.2d
 at 607 (affirming conviction for aggravated assault where defendant's
 objection to jury charge was based on lack of actual serious injury to
 victim, which was held irrelevant to the issue of mens rea); Patch, 145 Vt.
 at 351-52, 488 A.2d at 760-61 (affirming unlawful mischief conviction where
 defendant asked for jury instruction requiring finding of either "malice"
 or intent to damage state property, instead of intent to damage property he
 did not own); Blakeney, 137 Vt. at 499, 501, 408 A.2d at 639, 640
 (affirming aggravated assault conviction where information charged
 defendant with causing serious bodily injury both "knowingly" and
 "purposely," and where defendant challenged the sufficiency of the
 evidence, not the jury charge, with respect to mens rea). These cases
 provide no basis for distinguishing or limiting Trombley here. It was
 therefore error for the trial court to charge the jury to consider whether
 defendant was "practically certain" that her actions would cause public
 annoyance or inconvenience.


 ¶ 8. The State contends that the trial court's error was harmless
 and does not require reversal. Under the harmless error standard, we may
 find a constitutional or nonconstitutional error harmless only if we can
 state a belief that the error was harmless beyond a reasonable doubt. 
 State v. Carter, 164 Vt. 545, 553-55, 674 A.2d 1258, 1264-66 (1996). In
 analyzing the effect of the error in this case, we first address
 defendant's assertion that the erroneous jury instruction resulted in the
 equivalent of a directed verdict for the State. Our case law indicates
 that such errors cannot ordinarily be considered harmless. In State v.
 Boise, we held that the trial court's erroneous jury instruction-informing
 the jury that the defendant conceded to operating his vehicle on a public
 highway-was not harmless because it "removed an element from the jury's
 consideration." 146 Vt. 46, 48, 498 A.2d 495, 496 (1985). Despite the
 State's argument to the contrary, we found that the instruction had
 improperly relieved the State of its burden to prove each element of the
 crime beyond a reasonable doubt and could not, therefore, be harmless. Id. 
 Similarly, in State v. Martell, (FN2) we reversed a conviction where the
 trial court judge instructed the jury that it could presume that the
 defendant intended the "natural and probable consequences" of his actions. 
 143 Vt. 275, 278-80, 465 A.2d 1346, 1347-48 (1983). Based on the
 instruction, if the jury found that the defendant's actions were
 intentional, it was also required to find that the defendant intended the
 foreseeable consequences of those actions. This, we determined, amounted
 to a directed verdict.

 ¶ 9. The error here had a similar effect. The trial judge
 essentially instructed the jury that it could presume defendant intended to
 cause public annoyance or inconvenience if it found that defendant knew
 that such annoyance or inconvenience would occur. The instruction may have
 led the jury to ignore any evidence of defendant's intent and to convict
 solely based on her knowledge. Particularly in a case such as this, where
 intent was the only contested issue at trial, we are persuaded that the
 effect of the erroneous instruction was analogous to a directed verdict for
 the State. In light of defendant's right to a jury trial, we find that
 such an error cannot be harmless. (FN3) See Connecticut v. Johnson, 460 U.S.
 73, 85-86 (1983) (stating in a plurality opinion that "if the jury may have
 failed to consider evidence of intent, a reviewing court cannot hold that
 the error did not contribute to the verdict"); United States v. Hayward,
 420 F.2d 142, 144 (D.C. Cir. 1969) ("The rule against directed verdicts of
 guilt includes . . . situations in which the judge's instructions fall
 short of directing a guilty verdict but which nevertheless have the effect
 of so doing by eliminating other relevant considerations if the jury finds
 one fact to be true."). 

 ¶ 10. The State argues that Trombley should control the
 harmless-error analysis in this case. In Trombley, we held that the trial
 court's jury instruction on the issue of intent was harmless error. 174 Vt.
 at 462, 807 A.2d at 405. In that case, however, intent was not a contested 
 issue at trial; the defendant effectively admitted intending to cause
 serious bodily injury to the victim, and only contested whether he was
 justified in doing so by pleading self-defense. Id. Here, intent was the
 only issue defendant contested at trial. Defendant claimed that she
 intended only to protest the war in Iraq, not to cause public annoyance or
 inconvenience. (FN4) The State is correct that defendant could have had
 multiple intents, and a jury could certainly have convicted defendant based
 on the evidence presented at trial. The law makes a distinction between
 intentional and knowing acts, however, and defendant was entitled to have a
 jury decide whether causing public annoyance or inconvenience was her
 conscious object. The trial court's instruction prevented the jury from
 considering that question, effectively removing the element of intent from
 the crime, if not directing a guilty verdict. Again, we cannot say that
 this error was harmless beyond a reasonable doubt, so we must reverse
 defendant's conviction.
 
 ¶ 11. The dissent concedes that the jury instruction was
 erroneous, but posits that the intent issue was "practically uncontested"
 at trial. Post, ¶ 22. This logically leads the dissent to conclude that
 Neder v. United States applies to the facts of this case. 527 U.S. 1, 17
 (1999) (holding that harmless error is found "where a reviewing court
 concludes beyond a reasonable doubt that the omitted element was
 uncontested and supported by overwhelming evidence, such that the jury
 verdict would have been the same absent the error") (emphasis added). Our
 review of the record and briefings, however, shows that defendant did in
 fact deny intending to annoy or inconvenience the public and further
 testified at trial that her only intent was to educate the public and build
 support for a mass movement against the war. Whether or not defendant was
 credible in presenting that evidence is for a jury to decide; however, in
 reaching its conclusion, the dissent necessarily makes that credibility
 determination on appellate review. Despite defendant's legally sufficient
 argument to the contrary, the dissent stands in the shoes of the jury and
 determines, based on circumstantial evidence, that defendant had the
 requisite intent to be convicted. Thus, we disagree with the dissent
 because, as Justice Scalia noted in his dissent to Neder, "[t]he right to
 render the verdict in criminal prosecutions belongs exclusively to the
 jury; reviewing it belongs to the appellate court." Id. at 38. 
 
 ¶ 12. Where, as here, intent is the central-and only-issue, and the
 defendant presents minimally sufficient evidence rebutting intent, we
 cannot say that an erroneous jury instruction on that issue amounts to
 harmless error. This view of the harmless-error analysis is well supported
 by our case law and that of states across the country. See State v.
 Sargent, 156 Vt. 463, 467-68, 594 A.2d 401, 403 (1991) (reversing
 kidnapping conviction based on erroneous jury instruction on intent where
 "[d]efendant's case, as presented to the jury, centered on assertions that
 he lacked the requisite purpose or knowledge" and defendant "repeatedly
 testified that he did not know he was holding the victim against her
 will"); see also State v. Ramirez, 945 P.2d 376, 382 (Ariz. Ct. App. 1998)
 (error in premeditation instruction was not harmless where premeditation
 was "the only contested issue" at trial and substantial evidence supported
 defendant's argument); Sharma v. State, 56 P.3d 868, 873-74 (Nev. 2002)
 (error instructing jury that defendant could be convicted of attempted
 murder based on intent to violate the law instead of intent to kill was not
 harmless where defendant devoted "substantial portions" of the case to
 disputing specific intent and presented sufficient evidence for jury to
 find he did not intend to kill victim); State v. Marrington, 73 P.3d 911,
 917 (Or. 2003) (error in admission of evidence was not harmless where it
 touched "central factual issue" and case was a "swearing contest"); State
 v. Page, 81 S.W.3d 781, 789-90 (Tenn. Crim. App. 2002) (concluding that
 "the mens rea of the defendant was indeed the disputed issue at trial," and
 therefore error in instruction on mens rea could not be harmless). Our
 difference with the dissent is over who decides defendant's guilt, not what
 the result should be. Affirming defendant's conviction on the basis of
 harmless error is therefore inappropriate, regardless of the weight of the
 State's evidence and the likelihood of a guilty verdict had the error not
 been made.

 ¶ 13. Because the issue is likely to recur on retrial, we address
 defendant's remaining argument. Defendant contends that the trial court
 erred in failing to admit her protest sign into evidence. Defendant
 proferred the sign, a collage of editorials opposing the war in Iraq and
 news articles describing the effects of the war on Iraqi civilians, as
 evidence of her intent. The State moved to exclude the sign based on
 Vermont Rule of Evidence 403, arguing that the sign, especially a portion
 that included a photograph of a wounded Iraqi child, was substantially more
 prejudicial than probative. The trial court considered the issue prior to
 defendant's testimony and granted the State's motion in part. The court
 found that the sign was relevant, stating, "It's actually part of the res
 gestae of the entire offense that's being suggested here," but also
 determined that the sign carried a "possibility of inflaming the passions
 of jurors." The court allowed defendant to show the sign to the jury to
 demonstrate how she used it during the protest and referred to it in
 response to a police officer's request that she leave the intersection. 
 The court refused to admit the sign into evidence, however, and did not
 permit the sign into the jury room during the jury's deliberations. 
 Defendant argues that the sign was not too prejudicial to be admitted into
 evidence and allowed into the jury room. Trial court rulings under Rule
 403 are "highly discretionary," and we will not reverse such rulings absent
 an abuse of discretion. State v. Gibney, 2003 VT 26, ¶ 23, 175 Vt. 180,
 825 A.2d 32. 
 
 ¶ 14. Defendant is actually challenging two separate decisions of
 the trial court: its decision not to admit the sign into evidence, and its
 decision not to allow the jury to use the sign during its deliberations. 
 While exhibits admitted into evidence are typically allowed into the jury
 room, there are circumstances under which it is appropriate for a court to
 exclude exhibits from the jury room. See State v. Buckley, 149 Vt. 663,
 663, 546 A.2d 798, 799 (1988) (mem.) (stating that which exhibits are made
 available to the jury during its deliberations is in the discretion of the
 trial court); 2 J. Strong et al., McCormick on Evidence § 217, at 28-30
 (4th ed.1992) (noting that "whether a particular exhibit may be taken by
 the jury is widely viewed as subject to discretionary control by the trial
 judge," and questioning the practice of sending tangible exhibits to the
 jury room). 

 ¶ 15. Here, the trial court was apparently unconcerned about the
 prejudice that could result from showing the sign to the jury during
 defendant's testimony, but feared the impact of defendant's protest sign on
 the jury's deliberations. A ruling admitting the sign into evidence, but
 preventing its use in the jury room, would have had the same effect on the
 trial. If there was a distinction between the sign's prejudicial effect as
 an aid to defendant's testimony and its prejudicial effect on the jury's
 deliberations, such a ruling would have clarified that distinction, while
 also ensuring the sign's inclusion in the record. See 2 McCormick on
 Evidence, supra, § 213, at 11 ("[N]umerous appellate courts have commented
 upon the difficulties created on appeal when crucial testimony has been
 given in the form of indecipherable references to an object not available
 to the reviewing court."). On retrial, the trial court should first
 determine the sign's probative value and prejudicial effect for purposes of
 its admissibility into evidence and use in the courtroom. If the court
 admits the sign into evidence, it should then consider whether some
 additional prejudicial effect necessitates its exclusion from the jury
 room.
 
 Reversed and remanded for further proceedings consistent with the
 views expressed herein. 



 FOR THE COURT:


 ______________________________
 Associate Justice

 
------------------------------------------------------------------------------
 Dissenting


 ¶ 16. BURGESS, J., dissenting. Confident that the trial court's
 misdescription of the intent element in this particular case was harmless
 beyond a reasonable doubt , I respectfully dissent. The majority is
 correct that the trial court erred in allowing the jury the option to find
 defendant guilty of disorderly conduct by acting either "with the conscious
 object," that is "with intent," to cause public inconvenience or
 annoyance, or by acting with "practical certainty," or "knowingly," that
 public inconvenience or annoyance would result from her actions. Ante ¶
 7. The majority is also correct that, since State v. Trombley, 174 Vt.
 459, 807 A.2d 400 (2002) (mem.), the element of "intentional" action in a
 criminal statute derived from the Model Penal Code, such as the disorderly
 conduct statute, means to act not "knowingly," but "purposely." Ante ¶
 7. The State was required to prove, as it expressly charged, that
 defendant obstructed traffic "with intent to cause," rather than
 "knowingly" cause, public inconvenience and annoyance. Nevertheless, given
 the overwhelming evidence of defendant's actual intent to cause public
 inconvenience by obstructing traffic, the error was harmless because "we
 can say beyond a reasonable doubt that the result would have been the same
 in the absence of the error." State v. Kinney, 171 Vt. 239, 244, 762 A.2d
 833, 838 (2000).
 
 ¶ 17. Defendant essentially, if not explicitly, admitted the
 disorderly conduct at trial. Defendant testified that she deliberately
 stepped off the sidewalk to stand in the intersection of Routes 7 and 9,
 two public highways in downtown Bennington, holding an anti-war placard. 
 She admitted that her actions stopped and interfered with traffic, and that
 motorists were being inconvenienced and annoyed as a result. Defendant
 admitted that, while aware her highway blockade was causing public
 inconvenience and annoyance, she repeatedly refused to move out of the way
 when requested by officers to do so. Defendant further admitted that she
 was strongly tempted to return to the sidewalk, but prayed for the strength
 to remain, and then decided to remain, in the street blocking traffic. 

 ¶ 18. Defendant's testimony proved the elements of disorderly
 conduct as charged: that she obstructed vehicular traffic "with intent to
 cause public inconvenience or annoyance, in violation of 13 V.S.A.
 §1026(5)," and did so "purposely" under the Model Penal Code applied in
 Trombley, 174 Vt. at 460-61, 807 A.2d 403-04. The Code, § 2.02(2)(a),
 states that a person acts "purposely" when:

 (i) if the element involves the nature of his conduct or a result
 thereof, it is his conscious object to engage in conduct of that
 nature or to cause such a result . . . .

 Defendant's intentional obstruction of traffic was not disputed. That the
 motorists were inconvenienced and annoyed as a result, and defendant's
 awareness of same, were not disputed. Having admitted that she was aware
 her conduct was causing public inconvenience and annoyance, defendant told
 the jury that she resisted the temptation to stop doing it. Defendant told
 the jury that, inspired by prayer, she then consciously elected to continue
 causing public inconvenience and annoyance by continuing to block the
 public way. In Model Penal Code terms, defendant admitted that, as of the
 time of deciding to continue obstructing traffic, the "nature of [her]
 conduct" in obstructing traffic was to annoy and inconvenience the public,
 and admitted that it was her "conscious object to engage in conduct of that
 nature." Id.
 
 ¶ 19. Nevertheless, defendant also explained to the jury, and
 argued on appeal, that in blocking traffic it was not her intent to
 inconvenience and annoy people. Defendant denied such an intent, and
 testified that she only meant to show her sign, to share her anti-war
 information and to show resistance to the federal government. So selective
 and implausible is this proposition that it does not achieve even the level
 of sophistry. That defendant was also motivated by a non-criminal urge to
 communicate and show political opposition does not mutually exclude a
 contemporaneous and, in this case, manifest criminal intent to cause public
 inconvenience and annoyance. 

 ¶ 20. The majority posits that a finding of harmless error on this
 record usurps the jury's function to resolve a credibility contest or weigh
 testimony concerning defendant's intent, but there is no real dispute over
 what she did and intended. The majority's case citations are inapposite. 
 There was no "swearing contest" here as described in State v. Marrington,
 73 P.3d 911, 917 (Or. 2003), nor was a "substantial portion" of the trial
 devoted to contested evidence of intent as in Sharma v. State, 56 P.3d 868,
 873-74 (Nev. 2002). Nothing here approached the evidentiary duel over the
 influence of intoxication on defendant's intent presented in State v. Page,
 81 S.W.3d 781, 789-90 (Tenn. Crim. App. 2002), and no "substantial
 evidence" supports the claimed lack of criminal intent as was found on the
 record in State v. Ramirez, 945 P.2d 376, 382 (Ariz. Ct. App. 1998). The
 dispute over intent in the instant case was not evidentiary, but
 rhetorical. In contrast to the kidnapping defendant in State v. Sargent,
 156 Vt. 463, 467-68, 594 A.2d 401, 403 (1991), whose repeated testimony
 that "he did not know he was holding the victim against her will" was also
 supported by psychiatric and police testimony, the defendant here admitted
 to deliberately blocking traffic which she knew was causing public
 inconvenience and annoyance, and then admitted to deciding to continue
 doing so. 
 
 ¶ 21. My difference with the majority is not over who decides or
 what the verdict should be, but that the same guilty verdict was inevitable
 given defendant's admissions. Defendant testified that she elected to
 continue obstructing traffic after knowing that it was causing public
 inconvenience and annoyance. At that point of refusing to move, there can
 be no actual, real-world dispute that defendant acted "with intent," or
 "purposely," to cause the inconvenience and annoyance patently obvious to
 her and to the jury by deliberately obstructing traffic with a placard. 
 Where it is "clear beyond a reasonable doubt that a rational jury would
 have found the defendant guilty absent the [instruction] error," a finding
 of harmless error presents no invasion of the jury's fact finding process. 
 Neder v. United States, 527 U.S. 1, 18 (1999).

 ¶ 22. This case presents a situation almost identical to Trombley,
 where the substantially same erroneous jury instruction was deemed
 harmless. Although Mr. Trombley was charged only with "purposely"
 assaulting another, the trial court instructed that "purposely" meant that
 defendant either "acted with the conscious purpose of causing serious
 bodily injury or that he acted under circumstances where he was practically
 certain" to cause such injury. Trombley, 174 Vt. at 460, 807 A.2d at 403. 
 While agreeing that the latter option erroneously extended culpability to
 knowing misconduct when only purposeful misconduct was alleged, this Court
 found the error harmless beyond a reasonable doubt because defendant
 admitted at trial that he intended to inflict such injury as a means of
 self-defense. Id. at 462, 807 A.2d at 405. Here, defendant admitted at
 trial that upon realizing that her obstruction did cause, and was causing,
 public inconvenience and annoyance, rather than moving as requested, she
 purposely continued to cause public inconvenience and annoyance.

 ¶ 23. Review for harmless error requires this court "to inquire if,
 absent the alleged error, it is clear beyond a reasonable doubt that the
 jury would have returned a guilty verdict regardless of the error. . . .
 Thus, analysis under the harmless error doctrine focuses on the evidence of
 guilt present in the record." State v. Hamlin, 146 Vt. 97, 106, 499 A.2d
 45,52 (1985). Harmless error is found even when necessary elements are
 omitted altogether from instructions in situations "where a reviewing court
 concludes beyond a reasonable doubt that the omitted element was
 uncontested and supported by overwhelming evidence, such that the jury
 verdict would have been the same absent the error." Neder, 527 U.S. at 17. 
 The instant case is practically uncontested. Defendant's testimony about
 her deliberate obstruction of traffic for the purpose of showing her sign,
 sharing her information and resisting government is entirely consistent
 with an intent to cause public inconvenience and annoyance. Defendant's
 one-word denial (FN5) was belied by her own detailed description of her
 perception of the public inconvenience and annoyance resulting from her
 conduct and, afterwards, her decision to continue obstructing traffic.
 
 ¶ 24. Even if defendant's testimony is not understood as an
 admission to having a conscious object to cause public inconvenience and
 annoyance, harmless error does not depend on whether defendant "conceded
 the factual issue on which the error bore. . . . The question is whether,
 'on the whole record . . . the error . . . [is] harmless beyond a
 reasonable doubt.' " Rose v. Clark, 478 U.S. 570, 583 (1986) (citation
 omitted). Mere denial of the requisite intent does not preclude harmless
 error. In cases of Sandstrom error, where trial courts erroneously
 instruct the jury to conclusively presume an element of criminal intent
 "the inquiry is whether the evidence was so dispositive of intent that a
 reviewing court can say beyond a reasonable doubt that the jury would have
 found it unnecessary to rely on the presumption." Connecticut v. Johnson,
 460 U.S. 73, 97 n.5 (1983) (Powell, J., dissenting). "Thus, the fact that
 respondent denied that he had [criminal intent], . . . does not dispose of
 the harmless-error question." Rose, 478 U.S. at 583-84 (quotations and
 citation omitted). 
 
 ¶ 25. State v. Boise, 146 Vt. 46, 498 A.2d 495 (1985), and United
 States v. Hayward, 420 F.2d 142 (D.C. Cir. 1969), cited by the majority for
 holding that an erroneous instruction directing a verdict against a
 defendant on an element cannot be harmless error, are inapposite to the
 instant case where no verdict was directed. In Boise, we reversed on the
 trial court's erroneous jury instruction in a DUI case that a necessary
 element-that the conduct at issue must occur upon a public highway-was
 "conceded," based on the trial court finding the element proven "as a
 matter of law." 146 Vt. at 48, 498 A.2d at 496-97. In Hayward, the appeals
 court refused to find harmless error when the trial court erroneously
 instructed the jury that it "must" return a guilty verdict if it found the
 government disproved defendant's alibi defense. 420 F.2d at 144. Unlike
 Boise and Hayward, nothing like a directed verdict was instructed in this
 case where the court mistakenly conflated "knowing" and "purposeful"
 conduct in its definition of criminal intent, but did not remove the intent
 element entirely from the jury's consideration. 

 ¶ 26. Even if the instruction below could be equated to a conclusive
 presumption, the majority erroneously relies on Johnson and its progeny, 
 State v. Martell, 143 Vt. 275, 465 A.2d 1346 (1983), for the proposition
 that such an instructional error cannot be harmless. Martell depends on a
 Johnson plurality opinion (FN6) for the idea that a conclusive presumption
 of criminal intent " 'is the functional equivalent of a directed verdict'
 and may never be considered harmless." Martell, 143 Vt. at 279-80, 465 A.2d
 at 1348 (citations omitted). This underpinning of Martell, to the extent
 it ever existed, no longer stands. In the subsequent matter of Carella v.
 California, 491 U.S. 263, 266 (1989), the Johnson plurality was ignored as
 any authority when the court remanded a case of unconstitutional
 instruction on a conclusive presumption of criminal intent for
 harmless-error review. 

 ¶ 27. Explicitly contradicting the supposed holding in Johnson, and
 contrary to the majority's logic here, the court in Carrella ruled that a
 "Sandstrom error is subject to the harmless error rule." Id. (emphasis
 added). (FN7) The Carrella court repeated its earlier holding in Sandstrom
 that, although a trial court's "mandatory directions directly foreclosed
 independent jury consideration of whether the facts proved established
 certain elements of the offenses . . . and even though the jury might have
 considered the presumption to be conclusive," the constitutional error was
 still subject to harmless-error analysis. Id. Thus, Martell's
 proposition, premised on Johnson, and on which the majority now relies,
 that an "instruction susceptible to interpretation by a reasonable juror as
 requiring a conclusive presumption of an essential element . . . may never
 be deemed harmless error," Martell, 143 Vt. at 280, 465 A.2d at 1348, was
 not, and is not, the law.
 
 ¶ 28. Cited in Carella, and similarly ignoring Johnson, was the
 earlier holding in Rose v. Clark that the harmless-error test did apply to
 an erroneous rebuttable-presumption instruction that unconstitutionally
 shifted the burden of proof on the element of malice from the state to a
 murder defendant. 478 U.S. 570, 580-81 (1986). Noting that constitutional
 errors do not generally require reversal of criminal convictions, id. at
 578-79, the court reiterated that "we have repeatedly reaffirmed the
 principle that an otherwise valid conviction should not be set aside if the
 reviewing court may confidently say, on the whole record, that the
 constitutional error was harmless beyond a reasonable doubt." Id. at 576. 
 This principle applies regardless of whether the element is admitted or
 contested by defendant at trial, id. at 583, and extends to erroneous
 instructions that misdescribe or misstate a necessary element, as in this
 case. See Neder, 527 U.S. at 9-10 (summarizing constitutional errors in
 instructions subject to harmless-error analysis, including "misstatement of
 element," Pope v. Illinois, 481 U.S. 497 (1987), (FN8) and "
 'misdescription of an element . . . characterized as an error of
 'omission.' " California v. Roy, 519 U.S. 2, 5 (1996)).
 
 ¶ 29. If the jury in the instant case followed the erroneous, but
 only slightly less demanding instruction on "knowing," instead of the
 correct instruction on "purposeful" misconduct, the issue of intent was
 neither conclusively presumed nor taken away from the jury's determination. 
 Either instruction left to the jury the responsibility to find defendant
 not guilty or guilty depending on evidence relating to intent. That there
 was hardly a substantive difference between the two standards of acting
 purposely versus knowingly, when compared to the uncontested proof in this
 case, was the product of defendant's testimony. If defendant's testimony
 is not an admission to the charge of acting with intent to cause public
 inconvenience and annoyance, that exact same object was necessarily
 intrinsic to her admittedly conscious intent to obstruct traffic. The
 intent to cause public inconvenience and annoyance is inseparable from
 defendant's declared decision to remain in traffic after knowing, not as a
 practical certainty, but as an absolute certainty, that her conduct was
 causing public inconvenience and annoyance. Quite analogous was this
 court's observation in State v. Pratt, 147 Vt. 116, 118, 513 A.2d 606, 607
 (1986), (FN9) that "[w]hen a person points a revolver in the direction of
 another person at close range and pulls the trigger, the practical
 distinction between acting with the conscious objective of causing serious
 bodily injury and acting with practical certainty that one's conduct will
 cause such injury disappears." If anything directed a verdict of guilt in
 this case, it was not the court's instruction, but the testimony of
 defendant. (FN10)
 
 ¶ 30. Accordingly, I would affirm the conviction. I am authorized
 to say that Justice Dooley joins in this dissent.



 ______________________________
 Associate Justice




------------------------------------------------------------------------------
 Footnotes


FN1. See State v. Read, 165 Vt. 141, 147, 687 A.2d 944, 948 (1996) ("In
 1972, the Legislature amended Vermont's 'breach of the peace' statute to
 follow the 'disorderly conduct' language of [the Code.] . . . The major
 statutory change was the added requirement that the State prove, as an
 essential element of the offense, that a defendant acted with the intent to
 cause public inconvenience or annoyance, or with such recklessness as to
 create a risk of public inconvenience or annoyance.") (citations omitted). 

FN2. The claim, in note 2 of the dissent, that in Martell we did not
 consider that Connecticut v. Johnson, 460 U.S. 73 (1983), was a plurality
 opinion is plainly incorrect. To the contrary, we referred to the Johnson
 court as "sharply divided" and to the opinion as the "majority's plurality
 opinion." Martell, 143 Vt. 275, 279, 465 A.2d 1346, 1348 (1983). Thus, we
 were persuaded by the holding in Johnson despite its being a plurality
 decision.

FN3. The dissent misunderstands our holding and posits that we are
 foreclosing a harmless-error analysis on review of all criminal cases
 involving a conclusive presumption or the equivalent (as we have here). 
 Not so; we recognize that there are situations in which a conclusive
 presumption could result in harmless error (e.g., where the defendant does
 not contest intent, where the defendant effectively concedes intent by
 pleading self-defense or insanity, or where the jury acquits the defendant
 on a lesser charge-indicating that they did not employ the presumption). 
 Here, however, defendant was essentially deprived of a jury trial because
 intent was the only issue on which she was tried, she presented sufficient
 evidence of non-criminal intent, and the instruction effectively took that
 one issue away from the jury.

FN4. The dissent overstates defendant's admissions when it claims that in
 Model Penal Code terms, she "admitted that . . . the 'nature of [her]
 conduct' in obstructing traffic was to annoy and inconvenience the public,
 and . . . that it was her 'conscious object to engage in conduct of that
 nature.' " Post, ¶ 17. To reach this conclusion, the dissent necessarily
 must infer an intent different than the one explicitly stated by defendant.

FN5. After admitting her awareness of the inconvenient and annoying effects
 of her blockade, and her determination to continue her blockade, defendant
 was questioned by defense counsel: "Now, I'm going to ask you was that your
 intention when you stood in the middle of the four corners with your sign,
 that it was it your intention to inconvenience and annoy people," defendant
 answered: "No." By analogy, this was akin to claiming, after driving
 blindfolded and realizing this caused her to crash into traffic, that when
 she continued to do so, she did not intend to cause any collisions.

FN6. The Martell court curiously refers to the "majority's analysis" in
 Johnson as "both persuasive and compelling," 143 Vt. at 279, 465 A.2d at
 1348, but there is no majority analysis. The Johnson court split 4-4 as to
 whether Sanstrom error could never be harmless. The ninth justice did not
 join in either opinion, but cast a vote only to affirm the state court's
 decision to decline review for harmless error for the benefit of the
 prosecution when it had no federal obligation to do so. Johnson, 460 U.S.
 at 89-90 (Stevens, J., concurring).

FN7. The Carrella court added, expressly contrary to the logic of Martell
 and the majority's analysis here: "Nor is Sandstrom error equivalent to a
 directed verdict for the state." 491 U.S. at 266 (quotations omitted).

FN8. Pope also points out that "[t]o the extent that cases prior to Rose
 [such as Johnson] may indicate that a conviction can never stand if the
 instructions provided the jury do not require it to find each element of
 the crime under the proper standard of proof, . . . after Rose, they are no
 longer good authority." 481 U.S. at 503, n.7.

FN9. In Pratt we declined to find reversible error in a conviction for
 attempted aggravated assault where the trial court instructed the jury that
 specific intent could be found if defendant "consciously intended serious
 bodily injury or was practically certain his conduct would cause it." 147
 Vt. at 118, 513 A.2d at 607.

FN10. The majority's logic stands harmless-error analysis on its head to
 prevent a finding of harmless error precisely when the error is most
 harmless. The rule of harmless error recognizes that in circumstances when
 the state's evidence is overwhelming, and the defense case is weak, the
 reviewing court need not overturn a conviction due to an error that is
 objectively meaningless. The majority posits, instead, that when the
 defense is so weak, such error has the effect of directing the verdict and
 so harmless error must be foreclosed when it is most warranted.