2006 VT 119

# State of Vermont v. Rosemarie Jackowski

[915 A.2d 767]

No. 04-455

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed November 22, 2006

*William D. Wright*, Bennington County State's Attorney, and *Daniel M. McManus*, Deputy State's Attorney, Bennington, for Plaintiff-Appellee.

*Stephen L. Saltonstall* of *Barr Sternberg Moss Lawrence Silver Saltonstall & Scanlon, P.C.*, Bennington, for Defendant-Appellant.

¶ 1. **Johnson, J.** Defendant Rosemarie Jackowski appeals her conviction for disorderly conduct. Defendant argues that the trial court improperly instructed the jury to consider whether defendant was "practically certain" that her conduct would cause public inconvenience or annoyance, when she was charged with intentionally causing public inconvenience or annoyance. Defendant also contends that the trial court erred in excluding from evidence the protest sign she was carrying at the time of her arrest. We reverse and remand.

¶ 2. Defendant was arrested on March 20, 2003, during an anti-war demonstration at the intersection of Routes 7 and 9 in Bennington. During the demonstration, protesters blocked traffic at the intersection for approximately fifteen minutes. Defendant stood in the intersection, praying and holding a sign bearing anti-war slogans and newspaper clippings, including an article accompanied by a photograph of a wounded Iraqi child. Police officers repeatedly asked defendant to leave the intersection, and when she refused, she was arrested, along with eleven other protesters. The State charged them with disorderly conduct, alleging that defendant and the other protesters, "with intent to cause public inconvenience and annoyance, obstructed vehicular traffic, in violation of 13 V.S.A. § 1026(5)."

¶ 3. Defendant's intent was the only issue contested during her one-day jury trial. After several police officers testified for the State, defendant took the stand, admitting to blocking traffic, but stating that her only intention in doing so was to protest the war in Iraq, not to cause public inconvenience or annoyance. In response to the State's motion in limine to exclude defendant's protest sign, the trial court

allowed defendant to display the sign to the jury and demonstrate how she was carrying it, but refused to admit it into evidence and allow it into the jury room. At the conclusion of the trial, the court instructed the jury on the issue of intent. The court first instructed the jury that the State could establish defendant's intent to cause public inconvenience or annoyance by proving beyond a reasonable doubt that she acted "with the conscious object of bothering, disturbing, irritating, or harassing some other person or persons." The court then added, "This intent may also be shown if the State proves beyond a reasonable doubt that the defendant was practically certain that another person or persons . . . would be bothered, disturbed, irritated, or harassed." The jury convicted defendant of disorderly conduct. Defendant appeals.

■ ¶ 4. Defendant first argues that the jury charge was improper because the trial court failed to instruct the jury to consider whether defendant acted with the requisite criminal intent. "In reviewing jury instructions, the relevant inquiry is whether the instructions as a whole were misleading or inadequate to aid the jury's deliberations." *State v. Shabazz*, 169 Vt. 448, 450, 739 A.2d 666, 667 (1999). A jury charge will be upheld "[i]f the charge as a whole breathes the true spirit and doctrine of the law, and there is no fair ground to say that the jury has been misled by it." *Harris v. Carbonneau*, 165 Vt. 433, 438, 685 A.2d 296, 300 (1996) (internal quotation marks and citations omitted). The charge will stand unless it undermines our confidence in the verdict. *Shabazz*, 169 Vt. at 450, 739 A.2d at 667.

¶ 5. Defendant relies on *State v. Trombley* to draw a distinction between offenses that require purposeful or intentional misconduct and those that require only knowing misconduct. 174 Vt. 459, 462, 807 A.2d 400, 404-05 (2002) (mem.). In *Trombley*, we held that it was error for the trial court to instruct the jury to consider whether the defendant in an aggravated assault case acted "knowingly" or "purposely," when he was charged with "purposely" causing serious bodily injury. *Id.* The aggravated assault statute in *Trombley*, 13 V.S.A. § 1024(a)(1), had been amended in 1972 to adopt the Model Penal Code's approach to mens rea, which distinguishes among crimes that are committed "purposely," "knowingly," and "recklessly." *Id.* at 461, 807 A.2d at 404. Under this approach, a person acts "purposely" when "it is his conscious object to engage in conduct of that nature or to cause such a result." MPC § 2.02(2)(a)(i). A person acts "knowingly" when "he is aware that it is practically certain that his conduct will cause such a

result." MPC § 2.02(2)(b)(ii). While the Code's provisions are not binding on this Court, they are "indicative of what the General Assembly intended in adopting the legislation modeled on the Code." *Trombley*, 174 Vt. at 461, 807 A.2d at 404. Thus, the trial court in *Trombley* erred in instructing the jury that it could find that the defendant acted "purposely" if "he was practically certain that his conduct would cause serious bodily injury." *Id.* at 460, 807 A.2d at 403.

¶ 6. Defendant argues that *Trombley* controls here, as the trial court used a similarly worded jury charge, and the disorderly conduct statute was amended at the same time, and for the same reasons, as the aggravated assault statute in *Trombley*.[1] The State attempts to distinguish *Trombley* based on differences in the language of the aggravated assault and disorderly conduct statutes. Unlike the aggravated assault statute, the disorderly conduct statute contains the words "with intent" and not "purposely." Compare 13 V.S.A. § 1026 (establishing mens rea for disorderly conduct as "with intent to cause public inconvenience, or annoyance or recklessly creating a risk thereof") with 13 V.S.A. § 1024(a)(1) (listing "purposely," "knowingly," and "recklessly" as culpable states of mind for aggravated assault). This is a purely semantic distinction, and it does not indicate a departure from the Code's approach to mens rea, the adoption of which was "the major statutory change" accomplished by the Legislature's 1972 amendments. *Read*, 165 Vt. at 147, 680 A.2d at 948. The Code does not differentiate between "with intent" and "purposely"; instead, it uses the two terms interchangeably, explaining in its definitions that "'intentionally' or 'with intent' means purposely." MPC § 1.13(12). There is no indication that the Legislature used the phrase "with intent" to register disagreement with the Code's approach to disorderly conduct, and such disagreement seems unlikely in the context of an otherwise unqualified adoption of the Code's approach.

█ ¶ 7. The State cites several cases supporting the proposition that both "purposely" and "knowingly" causing harm involve some element of "intent," and thus, that *Trombley*'s distinction between "purposely"

---

[1] See *State v. Read*, 165 Vt. 141, 147, 680 A.2d 944, 948 (1996) ("In 1972, the Legislature amended Vermont's 'breach of the peace' statute to follow the 'disorderly conduct' language of [the Code.] ... The major statutory change was the added requirement that the State prove, as an essential element of the offense, that a defendant acted with the intent to cause public inconvenience or annoyance, or with such recklessness as to create a risk of public inconvenience or annoyance.") (citations omitted).

and "knowingly" is illusory. See *State v. LaClair*, 161 Vt. 585, 587, 635 A.2d 1202, 1204 (1993) (mem.) ("When one causes harm 'purposely' or 'knowingly,' the person possesses some degree of an intent to harm."); *State v. Patch*, 145 Vt. 344, 352, 488 A.2d 755, 760 (1985) ("A specific intent crime includes 'as an essential mental element that the act be done purposefully or knowingly.'") (quoting *State v. D'Amico*, 136 Vt. 153, 156, 385 A.2d 1082, 1084 (1978)). The State also identifies cases approving of "practically certain" instructions in aggravated assault trials. See *State v. Pratt*, 147 Vt. 116, 118, 513 A.2d 606, 607 (1986) (holding that "practically certain" instruction was proper despite lack of actual injury to victim); *State v. Blakeney*, 137 Vt. 495, 501, 408 A.2d 636, 640 (1979) (stating that specific intent was shown where the defendant was "practically certain that his conduct would cause serious bodily injury"). Each of these cases predates our decision in *Trombley*, however, and each adheres to an outmoded distinction between "specific intent" and "general intent" crimes — the distinction that the Legislature rejected in adopting the Code's approach to mens rea. See *Trombley*, 174 Vt. at 460-61, 807 A.2d at 403-04 (linking the Legislature's adoption of the Code's approach to mens rea to the demise of the common-law distinction between general and specific intent offenses). At common law, crimes committed "purposely" and those committed "knowingly" would both have been specific intent offenses. *Id.* at 461 n.3, 807 A.2d at 404 n.3. In the cases the State cites, the defendants did not raise the question of statutory construction at issue in *Trombley*, so this Court had no opportunity to effectuate the Legislature's adoption of a more modern approach to mens rea. See *LaClair*, 161 Vt. at 585-87, 635 A.2d at 1203-04 (approving of jury instruction and affirming conviction of defendant where State never charged defendant with "purposely" causing serious bodily injury); *Pratt*, 147 Vt. at 118, 513 A.2d at 607 (affirming conviction for aggravated assault where defendant's objection to jury charge was based on lack of actual serious injury to victim, which was held irrelevant to the issue of mens rea); *Patch*, 145 Vt. at 351-52, 488 A.2d at 760-61 (affirming unlawful mischief conviction where defendant asked for jury instruction requiring finding of either "malice" or intent to damage state property, instead of intent to damage property he did not own); *Blakeney*, 137 Vt. at 499, 501, 408 A.2d at 639, 640 (affirming aggravated assault conviction where information charged defendant with causing serious bodily injury both "knowingly" and "purposely," and where defendant challenged the sufficiency of the evidence, not the jury charge, with respect to mens

rea). These cases provide no basis for distinguishing or limiting *Trombley* here. It was therefore error for the trial court to charge the jury to consider whether defendant was "practically certain" that her actions would cause public annoyance or inconvenience.

¶ 8. The State contends that the trial court's error was harmless and does not require reversal. Under the harmless error standard, we may find a constitutional or nonconstitutional error harmless only if we can state a belief that the error was harmless beyond a reasonable doubt. *State v. Carter*, 164 Vt. 545, 553-55, 674 A.2d 1258, 1264-66 (1996). In analyzing the effect of the error in this case, we first address defendant's assertion that the erroneous jury instruction resulted in the equivalent of a directed verdict for the State. Our case law indicates that such errors cannot ordinarily be considered harmless. In *State v. Boise*, we held that the trial court's erroneous jury instruction — informing the jury that the defendant conceded to operating his vehicle on a public highway — was not harmless because it "removed an element from the jury's consideration." 146 Vt. 46, 48, 498 A.2d 495, 496 (1985). Despite the State's argument to the contrary, we found that the instruction had improperly relieved the State of its burden to prove each element of the crime beyond a reasonable doubt and could not, therefore, be harmless. *Id.* Similarly, in *State v. Martell*,[2] we reversed a conviction where the trial court judge instructed the jury that it could presume that the defendant intended the "natural and probable consequences" of his actions. 143 Vt. 275, 278-80, 465 A.2d 1346, 1347-48 (1983). Based on the instruction, if the jury found that the defendant's actions were intentional, it was also required to find that the defendant intended the foreseeable consequences of those actions. This, we determined, amounted to a directed verdict.

¶ 9. The error here had a similar effect. The trial judge essentially instructed the jury that it could presume defendant intended to cause public annoyance or inconvenience if it found that defendant knew that such annoyance or inconvenience would occur. The instruction may have led the jury to ignore any evidence of defendant's intent and to convict solely based on her knowledge. Particularly in a case

---

[2] The claim, in note 6 of the dissent, that in *Martell* we did not consider that *Connecticut v. Johnson*, 460 U.S. 73 (1983), was a plurality opinion is plainly incorrect. To the contrary, we referred to the *Johnson* Court as "sharply divided" and to the opinion as the "majority's plurality opinion." *Martell*, 143 Vt. 275, 279, 465 A.2d 1346, 1348 (1983). Thus, we were persuaded by the holding in *Johnson* despite its being a plurality decision.

such as this, where intent was the only contested issue at trial, we are persuaded that the effect of the erroneous instruction was analogous to a directed verdict for the State. In light of defendant's right to a jury trial, we find that such an error cannot be harmless.[3] See *Connecticut v. Johnson*, 460 U.S. at 85-86 (stating in a plurality opinion that "[i]f the jury may have failed to consider evidence of intent, a reviewing court cannot hold that the error did not contribute to the verdict"); *United States v. Hayward*, 420 F.2d 142, 144 (D.C. Cir. 1969) ("The rule against directed verdicts of guilt includes ... situations in which the judge's instructions fall short of directing a guilty verdict but which nevertheless have the effect of so doing by eliminating other relevant considerations if the jury finds one fact to be true.").

¶ 10. The State argues that *Trombley* should control the harmless-error analysis in this case. In *Trombley*, we held that the trial court's jury instruction on the issue of intent was harmless error. 174 Vt. at 462, 807 A.2d at 405. In that case, however, intent was not a contested issue at trial; the defendant effectively admitted intending to cause serious bodily injury to the victim, and only contested whether he was justified in doing so by pleading self-defense. *Id.* Here, intent was the only issue defendant contested at trial. Defendant claimed that she intended only to protest the war in Iraq, not to cause public annoyance or inconvenience.[4] The State is correct that defendant could have had multiple intents, and a jury could certainly have convicted defendant based on the evidence presented at trial. The law makes a distinction between intentional and knowing acts, however, and defendant was en-

---

[3] The dissent misunderstands our holding and posits that we are foreclosing a harmless-error analysis on review of all criminal cases involving a conclusive presumption or the equivalent (as we have here). Not so; we recognize that there are situations in which a conclusive presumption could result in harmless error (e.g., where the defendant does not contest intent, where the defendant effectively concedes intent by pleading self-defense or insanity, or where the jury acquits the defendant on a lesser charge — indicating that they did not employ the presumption). Here, however, defendant was essentially deprived of a jury trial because intent was the only issue on which she was tried, she presented sufficient evidence of noncriminal intent, and the instruction effectively took that one issue away from the jury.

[4] The dissent overstates defendant's admissions when it claims that in Model Penal Code terms, she "admitted that ... the 'nature of [her] conduct' in obstructing traffic was to annoy and inconvenience the public, and ... that it was her 'conscious object to engage in conduct of that nature.'" *Post*, ¶ 18. To reach this conclusion, the dissent necessarily must *infer* an intent different than the one explicitly stated by defendant.

titled to have a jury decide whether causing public annoyance or inconvenience was her conscious object. The trial court's instruction prevented the jury from considering that question, effectively removing the element of intent from the crime, if not directing a guilty verdict. Again, we cannot say that this error was harmless beyond a reasonable doubt, so we must reverse defendant's conviction.

¶ 11. The dissent concedes that the jury instruction was erroneous, but posits that the intent issue was "practically uncontested" at trial. *Post*, ¶ 23. This logically leads the dissent to conclude that *Neder v. United States* applies to the facts of this case. 527 U.S. 1, 17 (1999) (holding that harmless error is found "where a reviewing court concludes beyond a reasonable doubt that the omitted element was *uncontested* and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error") (emphasis added). Our review of the record and briefings, however, shows that defendant did in fact deny intending to annoy or inconvenience the public and further testified at trial that her only intent was to educate the public and build support for a mass movement against the war. Whether or not defendant was credible in presenting that evidence is for a jury to decide; however, in reaching its conclusion, the dissent necessarily makes that credibility determination on appellate review. Despite defendant's legally sufficient argument to the contrary, the dissent stands in the shoes of the jury and determines, based on circumstantial evidence, that defendant had the requisite intent to be convicted. Thus, we disagree with the dissent because, as Justice Scalia noted in his dissent to *Neder*, "[t]he right to render the verdict in criminal prosecutions belongs exclusively to the jury; reviewing it belongs to the appellate court." *Id.* at 38.

¶ 12. Where, as here, intent is the central — and only — issue, and the defendant presents minimally sufficient evidence rebutting intent, we cannot say that an erroneous jury instruction on that issue amounts to harmless error. This view of the harmless-error analysis is well supported by our case law and that of states across the country. See *State v. Sargent*, 156 Vt. 463, 467-68, 594 A.2d 401, 403 (1991) (reversing kidnapping conviction based on erroneous jury instruction on intent where "[d]efendant's case, as presented to the jury, centered on assertions that he lacked the requisite purpose or knowledge" and defendant "repeatedly testified that he did not know he was holding the victim against her will"); see also *State v. Ramirez*, 945 P.2d 376, 382 (Ariz. Ct. App. 1997) (error in premeditation instruction was not harmless where premeditation was "the only contested issue" at trial

and substantial evidence supported defendant's argument); *Sharma v. State*, 56 P.3d 868, 873-74 (Nev. 2002) (error instructing jury that defendant could be convicted of attempted murder based on intent to violate the law instead of intent to kill was not harmless where defendant devoted "substantial portions" of the case to disputing specific intent and presented sufficient evidence for jury to find he did not intend to kill victim); *State v. Marrington*, 73 P.3d 911, 917 (Or. 2003) (error in admission of evidence was not harmless where it touched "central factual issue" and case was a "swearing contest"); *State v. Page*, 81 S.W.3d 781, 789-90 (Tenn. Crim. App. 2002) (concluding that "the *mens rea* of the defendant was indeed *the* disputed issue at trial," and therefore error in instruction on mens rea could not be harmless). Our difference with the dissent is over *who* decides defendant's guilt, not *what* the result should be. Affirming defendant's conviction on the basis of harmless error is therefore inappropriate, regardless of the weight of the State's evidence and the likelihood of a guilty verdict had the error not been made.

¶ 13. Because the issue is likely to recur on retrial, we address defendant's remaining argument. Defendant contends that the trial court erred in failing to admit her protest sign into evidence. Defendant proffered the sign, a collage of editorials opposing the war in Iraq and news articles describing the effects of the war on Iraqi civilians, as evidence of her intent. The State moved to exclude the sign based on Vermont Rule of Evidence 403, arguing that the sign, especially a portion that included a photograph of a wounded Iraqi child, was substantially more prejudicial than probative. The trial court considered the issue prior to defendant's testimony and granted the State's motion in part. The court found that the sign was relevant, stating, "It's actually part of the res gestae of the entire offense that's being suggested here," but also determined that the sign carried a "possibility of inflaming the passions of jurors." The court allowed defendant to show the sign to the jury to demonstrate how she used it during the protest and referred to it in response to a police officer's request that she leave the intersection. The court refused to admit the sign into evidence, however, and did not permit the sign into the jury room during the jury's deliberations. Defendant argues that the sign was not too prejudicial to be admitted into evidence and allowed into the jury room. Trial court rulings under Rule 403 are "highly discretionary," and we will not reverse such rulings absent an abuse of discretion. *State v. Gibney*, 2003 VT 26, ¶ 23, 175 Vt. 180, 825 A.2d 32.

■ ¶ 14. Defendant is actually challenging two separate decisions of the trial court: its decision not to admit the sign into evidence, and its decision not to allow the jury to use the sign during its deliberations. While exhibits admitted into evidence are typically allowed into the jury room, there are circumstances under which it is appropriate for a court to exclude exhibits from the jury room. See *State v. Buckley*, 149 Vt. 663, 663, 546 A.2d 798, 799 (1988) (mem.) (stating that which exhibits are made available to the jury during its deliberations is in the discretion of the trial court); 2 J. Strong et al., McCormick on Evidence § 217, at 28-30 (4th ed. 1992) (noting that "whether a particular exhibit may be taken by the jury is widely viewed as subject to discretionary control by the trial judge," and questioning the practice of sending tangible exhibits to the jury room).

■ ¶ 15. Here, the trial court was apparently unconcerned about the prejudice that could result from showing the sign to the jury during defendant's testimony, but feared the impact of defendant's protest sign on the jury's deliberations. A ruling admitting the sign into evidence, but preventing its use in the jury room, would have had the same effect on the trial. If there was a distinction between the sign's prejudicial effect as an aid to defendant's testimony and its prejudicial effect on the jury's deliberations, such a ruling would have clarified that distinction, while also ensuring the sign's inclusion in the record. See 2 McCormick on Evidence, *supra*, § 213, at 11 ("[N]umerous appellate courts have commented upon the difficulties created on appeal when crucial testimony has been given in the form of indecipherable references to an object not available to the reviewing court."). On retrial, the trial court should first determine the sign's probative value and prejudicial effect for purposes of its admissibility into evidence and use in the courtroom. If the court admits the sign into evidence, it should then consider whether some additional prejudicial effect necessitates its exclusion from the jury room.

*Reversed and remanded for further proceedings consistent with the views expressed herein.*

¶ 16. **Burgess, J.,** dissenting. Confident that the trial court's misdescription of the intent element in this particular case was harmless beyond a reasonable doubt, I respectfully dissent. The majority is correct that the trial court erred in allowing the jury the option to find defendant guilty of disorderly conduct by acting either "with the conscious object," that is "with intent," to cause public inconvenience or annoyance, or by acting with "practical certainty," or "knowingly," that

public inconvenience or annoyance would result from her actions. *Ante,* ¶ 7. The majority is also correct that, since *State v. Trombley,* 174 Vt. 459, 807 A.2d 400 (2002) (mem.), the element of "intentional" action in a criminal statute derived from the Model Penal Code, such as the disorderly conduct statute, means to act not "knowingly," but "purposely." *Ante,* ¶ 7. The State was required to prove, as it expressly charged, that defendant obstructed traffic "with intent to cause," rather than "knowingly" cause, public inconvenience and annoyance. Nevertheless, given the overwhelming evidence of defendant's actual intent to cause public inconvenience by obstructing traffic, the error was harmless because "we can say beyond a reasonable doubt that the result would have been the same in the absence of the error." *State v. Kinney,* 171 Vt. 239, 244, 762 A.2d 833, 838 (2000).

¶ 17. Defendant essentially, if not explicitly, admitted the disorderly conduct at trial. Defendant testified that she deliberately stepped off the sidewalk to stand in the intersection of Routes 7 and 9, two public highways in downtown Bennington, holding an anti-war placard. She admitted that her actions stopped and interfered with traffic, and that motorists were being inconvenienced and annoyed as a result. Defendant admitted that, while aware her highway blockade was causing public inconvenience and annoyance, she repeatedly refused to move out of the way when requested by officers to do so. Defendant further admitted that she was strongly tempted to return to the sidewalk, but prayed for the strength to remain, and then decided to remain, in the street blocking traffic.

¶ 18. Defendant's testimony proved the elements of disorderly conduct as charged: that she obstructed vehicular traffic "with intent to cause public inconvenience or annoyance, in violation of 13 V.S.A. § 1026(5)," and did so "purposely" under the Model Penal Code applied in *Trombley,* 174 Vt. at 460-61, 807 A.2d at 403-04. The Code, § 2.02(2)(a), states that a person acts "purposely" when:

> (i) if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result . . . .

Defendant's intentional obstruction of traffic was not disputed. That the motorists were inconvenienced and annoyed as a result, and defendant's awareness of same, were not disputed. Having admitted that she was aware her conduct was causing public inconvenience and annoyance, defendant told the jury that she resisted the temptation to

stop doing it. Defendant told the jury that, inspired by prayer, she then consciously elected to continue causing public inconvenience and annoyance by continuing to block the public way. In Model Penal Code terms, defendant admitted that, as of the time of deciding to continue obstructing traffic, the "nature of [her] conduct" in obstructing traffic was to annoy and inconvenience the public, and admitted that it was her "conscious object to engage in conduct of that nature." *Id.*

¶ 19. Nevertheless, defendant also explained to the jury, and argued on appeal, that in blocking traffic it was not her intent to inconvenience and annoy people. Defendant denied such an intent, and testified that she only meant to show her sign, to share her anti-war information and to show resistance to the federal government. So selective and implausible is this proposition that it does not achieve even the level of sophistry. That defendant was also motivated by a noncriminal urge to communicate and show political opposition does not mutually exclude a contemporaneous and, in this case, manifest criminal intent to cause public inconvenience and annoyance.

¶ 20. The majority posits that a finding of harmless error on this record usurps the jury's function to resolve a credibility contest or weigh testimony concerning defendant's intent, but there is no real dispute over what she did and intended. The majority's case citations are inapposite. There was no "swearing contest" here as described in *State v. Marrington,* 73 P.3d 911, 917 (Or. 2003), nor was a "substantial portion" of the trial devoted to contested evidence of intent as in *Sharma v. State,* 56 P.3d 868, 873-74 (Nev. 2002). Nothing here approached the evidentiary duel over the influence of intoxication on defendant's intent presented in *State v. Page,* 81 S.W.3d 781, 789-90 (Tenn. Crim. App. 2002), and no "substantial evidence" supports the claimed lack of criminal intent as was found on the record in *State v. Ramirez,* 945 P.2d 376, 382 (Ariz. Ct. App. 1997). The dispute over intent in the instant case was not evidentiary, but rhetorical. In contrast to the kidnapping defendant in *State v. Sargent,* 156 Vt. 463, 467-68, 594 A.2d 401, 403 (1991), whose repeated testimony that "he did not know he was holding the victim against her will" was also supported by psychiatric and police testimony, the defendant here admitted to deliberately blocking traffic which she knew was causing public inconvenience and annoyance, and then admitted to deciding to continue doing so.

¶ 21. My difference with the majority is not over *who* decides or *what* the verdict should be, but that the same guilty verdict was inevitable given defendant's admissions. Defendant testified that she elected to

continue obstructing traffic *after* knowing that it was causing public inconvenience and annoyance. At that point of refusing to move, there can be no actual, real-world dispute that defendant acted "with intent," or "purposely," to cause the inconvenience and annoyance patently obvious to her and to the jury by deliberately obstructing traffic with a placard. Where it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the [instruction] error," a finding of harmless error presents no invasion of the jury's fact finding process. *Neder v. United States*, 527 U.S. 1, 18 (1999).

¶ 22. This case presents a situation almost identical to *Trombley*, where the substantially same erroneous jury instruction was deemed harmless. Although Mr. Trombley was charged only with "purposely" assaulting another, the trial court instructed that "purposely" meant that defendant either "acted with the conscious purpose of causing serious bodily injury *or* that he acted under circumstances where he was practically certain" to cause such injury. *Trombley*, 174 Vt. at 460, 807 A.2d at 403. While agreeing that the latter option erroneously extended culpability to knowing misconduct when only purposeful misconduct was alleged, this Court found the error harmless beyond a reasonable doubt because defendant admitted at trial that he intended to inflict such injury as a means of self-defense. *Id.* at 462, 807 A.2d at 405. Here, defendant admitted at trial that upon realizing that her obstruction did cause, and was causing, public inconvenience and annoyance, rather than moving as requested, she purposely continued to cause public inconvenience and annoyance.

¶ 23. Review for harmless error requires this Court "to inquire if, absent the alleged error, it is clear beyond a reasonable doubt that the jury would have returned a guilty verdict regardless of the error. . . . Thus, analysis under the harmless error doctrine focuses on the evidence of guilt present in the record." *State v. Hamlin*, 146 Vt. 97, 106, 499 A.2d 45, 52 (1985). Harmless error is found even when necessary elements are omitted altogether from instructions in situations "where a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error." *Neder*, 527 U.S. at 17. The instant case is practically uncontested. Defendant's testimony about her deliberate obstruction of traffic for the purpose of showing her sign, sharing her information and resisting government is entirely consistent with an intent to cause public inconvenience and annoyance. Defendant's one-

word denial[5] was belied by her own detailed description of her perception of the public inconvenience and annoyance resulting from her conduct and, afterwards, her decision to continue obstructing traffic.

¶ 24. Even if defendant's testimony is not understood as an admission to having a conscious object to cause public inconvenience and annoyance, harmless error does not depend on whether defendant "conceded the factual issue on which the error bore. . . . The question is whether, 'on the whole record . . . the error . . . [is] harmless beyond a reasonable doubt.'" *Rose v. Clark*, 478 U.S. 570, 583 (1986) (citation omitted). Mere denial of the requisite intent does not preclude harmless error. In cases of *Sandstrom* error, where trial courts erroneously instruct the jury to conclusively presume an element of criminal intent "the inquiry is whether the evidence was so dispositive of intent that a reviewing court can say beyond a reasonable doubt that the jury would have found it unnecessary to rely on the presumption." *Connecticut v. Johnson*, 460 U.S. 73, 97 n.5 (1983) (Powell, J., dissenting). "Thus, the fact that respondent denied that he had [criminal intent], . . . does not dispose of the harmless-error question." *Rose*, 478 U.S. at 583-84 (quotations and citation omitted).

¶ 25. *State v. Boise*, 146 Vt. 46, 498 A.2d 495 (1985), and *United States v. Hayward*, 420 F.2d 142 (D.C. Cir. 1969), cited by the majority for holding that an erroneous instruction directing a verdict against a defendant on an element cannot be harmless error, are inapposite to the instant case where no verdict was directed. In *Boise*, we reversed on the trial court's erroneous jury instruction in a DUI case that a necessary element — that the conduct at issue must occur upon a public highway — was "conceded," based on the trial court finding the element proven "as a matter of law." 146 Vt. at 48, 498 A.2d at 496-97. In *Hayward*, the appeals court refused to find harmless error when the trial court erroneously instructed the jury that it "must" return a guilty verdict if it found the government disproved defendant's alibi defense. 420 F.2d at 144. Unlike *Boise* and *Hayward*, nothing like a directed verdict was instructed in this case where the court mistakenly conflated

---

[5] After admitting her awareness of the inconvenient and annoying effects of her blockade, and her determination to continue her blockade, defendant was questioned by defense counsel: "Now, I'm going to ask you was that your intention when you stood in the middle of the four corners with your sign, that it was it your intention to inconvenience and annoy people," defendant answered: "No." By analogy, this was akin to claiming, after driving blindfolded and realizing this caused her to crash into traffic, that when she continued to do so, she did not intend to cause any collisions.

"knowing" and "purposeful" conduct in its definition of criminal intent, but did not remove the intent element entirely from the jury's consideration.

¶ 26. Even if the instruction below could be equated to a conclusive presumption, the majority erroneously relies on *Johnson* and its progeny, *State v. Martell*, 143 Vt. 275, 465 A.2d 1346 (1983), for the proposition that such an instructional error cannot be harmless. *Martell* depends on a *Johnson* plurality opinion[6] for the idea that a conclusive presumption of criminal intent "'is the functional equivalent of a directed verdict'" and "may never be considered harmless." *Martell*, 143 Vt. at 279, 465 A.2d at 1348 (citations omitted). This underpinning of *Martell*, to the extent it ever existed, no longer stands. In the subsequent matter of *Carella v. California*, 491 U.S. 263, 266 (1989), the *Johnson* plurality was ignored as any authority when the Court remanded a case of unconstitutional instruction on a conclusive presumption of criminal intent for harmless-error review.

¶ 27. Explicitly contradicting the supposed holding in *Johnson*, and contrary to the majority's logic here, the Court in *Carella* ruled that a "*Sandstrom* error *is* subject to the harmless-error rule." *Id.* (emphasis added).[7] The *Carella* Court repeated its earlier holding in *Sandstrom* that, although a trial court's "mandatory directions directly foreclosed independent jury consideration of whether the facts proved established certain elements of the offenses ... and even though the jury might have considered the presumption to be conclusive," the constitutional error was still subject to harmless-error analysis. *Id.* Thus, *Martell*'s proposition, premised on *Johnson*, and on which the majority now relies, that an "instruction susceptible to interpretation by a reasonable juror as requiring a conclusive presumption of an essential element ...

---

[6] The *Martell* Court curiously refers to the "majority's analysis" in *Johnson* as "both persuasive and compelling," 143 Vt. at 279, 465 A.2d at 1348, but there is no majority analysis. The *Johnson* Court split 4-4 as to whether *Sandstrom* error could never be harmless. The ninth justice did not join in either opinion, but cast a vote only to affirm the state court's decision to decline review for harmless error for the benefit of the prosecution when it had no federal obligation to do so. *Johnson*, 460 U.S. at 89-90 (Stevens, J., concurring).

[7] The *Carella* Court added, expressly contrary to the logic of *Martell* and the majority's analysis here: "Nor is *Sandstrom* error equivalent to a directed verdict for the State." 491 U.S. at 266 (quotations omitted).

may never be deemed harmless error," *Martell*, 143 Vt. at 279-80, 465 A.2d at 1348, was not, and is not, the law.

¶ 28. Cited in *Carella*, and similarly ignoring *Johnson*, was the earlier holding in *Rose v. Clark* that the harmless-error test did apply to an erroneous rebuttable-presumption instruction that unconstitutionally shifted the burden of proof on the element of malice from the state to a murder defendant. 478 U.S. at 580-81. Noting that constitutional errors do not generally require reversal of criminal convictions, *id.* at 578-79, the Court reiterated that "we have repeatedly reaffirmed the principle that an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." *Id.* at 576. This principle applies regardless of whether the element is admitted or contested by defendant at trial, *id.* at 583, and extends to erroneous instructions that misdescribe or misstate a necessary element, as in this case. See *Neder*, 527 U.S. at 9-10 (summarizing constitutional errors in instructions subject to harmless-error analysis, including "misstatement of element," *Pope v. Illinois*, 481 U.S. 497 (1987),[8] and "'misdescription of an element' . . . characterized as an error of 'omission.'" *California v. Roy*, 519 U.S. 2, 5 (1996)).

¶ 29. If the jury in the instant case followed the erroneous, but only slightly less demanding instruction on "knowing," instead of the correct instruction on "purposeful" misconduct, the issue of intent was neither conclusively presumed nor taken away from the jury's determination. Either instruction left to the jury the responsibility to find defendant not guilty or guilty depending on evidence relating to intent. That there was hardly a substantive difference between the two standards of acting purposely versus knowingly, when compared to the uncontested proof in this case, was the product of defendant's testimony. If defendant's testimony is not an admission to the charge of acting with intent to cause public inconvenience and annoyance, that exact same object was necessarily intrinsic to her admittedly conscious intent to obstruct traffic. The intent to cause public inconvenience and annoyance is inseparable from defendant's declared decision to remain in traffic after knowing, not as a practical certainty, but as an absolute certainty, that her conduct was causing public inconvenience and annoyance. Quite

---

[8] *Pope* also points out that "[t]o the extent that cases prior to *Rose* [such as *Johnson*] may indicate that a conviction can never stand if the instructions provided the jury do not require it to find each element of the crime under the proper standard of proof, . . . after *Rose*, they are no longer good authority." 481 U.S. at 504 n.7.

analogous was this Court's observation in *State v. Pratt*, 147 Vt. 116, 118, 513 A.2d 606, 607 (1986),[9] that "[w]hen a person points a revolver in the direction of another person at close range and squeezes the trigger, the practical distinction between acting with the conscious objective of causing serious bodily injury and acting with practical certainty that one's conduct will cause such injury disappears." If anything directed a verdict of guilt in this case, it was not the court's instruction, but the testimony of defendant.[10]

¶ 30. Accordingly, I would affirm the conviction. I am authorized to say that Justice Dooley joins in this dissent.

---

[9] In *Pratt* we declined to find reversible error in a conviction for attempted aggravated assault where the trial court instructed the jury that specific intent could be found if defendant "consciously intended serious bodily injury *or was practically certain his conduct would cause it.*" 147 Vt. at 117, 513 A.2d at 607.

[10] The majority's logic stands harmless-error analysis on its head to prevent a finding of harmless error precisely when the error is most harmless. The rule of harmless error recognizes that in circumstances when the State's evidence is overwhelming, and the defense case is weak, the reviewing court need not overturn a conviction due to an error that is objectively meaningless. The majority posits, instead, that when the defense is so weak, such error has the effect of directing the verdict and so harmless error must be foreclosed when it is most warranted.