NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2025 VT 1

No. 23-AP-303

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Windham Unit, |
| | Criminal Division |
| | |
| John R. Lyddy II | September Term, 2024 |

Katherine A. Hayes, J.

Evan Meenan, Deputy State's Attorney, Montpelier, for Plaintiff-Appellee.

Matthew Valerio, Defender General, and A. Alexander Donn, Appellate Defender, Montpelier, for Defendant-Appellant.

PRESENT: Reiber, C.J., Eaton, Cohen and Waples, JJ., and Johnson, J. (Ret.), Specially Assigned

¶ 1. **COHEN, J.** Defendant appeals his convictions of three counts of second-degree aggravated domestic assault and one count of felony unlawful mischief. He argues that the court erred by admitting a 911 caller's statement that defendant was beating the complainant, excluding a statement by an investigating police officer that the situation was "a wash," and failing to sua sponte strike the complainant's testimony that police had to tell her that she had been assaulted. Defendant claims that his convictions of the second and third counts of domestic assault violated the prohibition against double jeopardy because they were based on a single, continuous act. He contends that the trial court erroneously instructed the jury about the intent required to prove unlawful mischief. Finally, he argues that the court erred in allowing the jury to consider evidence

of damage to a laptop and a cocktail recipe book as part of the unlawful mischief charge. We reverse and remand for a new trial on the unlawful mischief count but otherwise affirm.

## I. Factual and Procedural History

¶ 2. In February 2020, defendant was charged with two counts of second-degree aggravated domestic assault under 13 V.S.A. § 1044(a)(2)(B), and one count of felony unlawful mischief under 13 V.S.A. § 3701(a). The State subsequently amended the information to add a third charge of second-degree aggravated domestic assault.

¶ 3. Defendant was tried by a jury over two days in June 2023. The State first presented testimony from a downstairs neighbor who called 911 during the incident that precipitated the charges, and then played the recording of the 911 call. The next witness was the complainant. She testified that on the evening of February 17, 2020, she was at the apartment she shared with defendant and was listening to music on her phone while getting ready for work. The song "Fun" by Selena Gomez, which contains lyrics about seeking out a different partner, began playing. Defendant heard the song and became upset. He yelled at the complainant, "You want to have fun? Go do it." The complainant got dressed and started putting on makeup. Defendant then began playing the song on his own phone at a high volume and held it up to her ear. She lifted her arm to brush away the phone and defendant slapped her arm down very hard.

¶ 4. The complainant went to work and defendant sent her a series of insulting text messages. The complainant's manager noticed she was upset and sent her home. The complainant returned to the apartment, where she and defendant tried to have a conversation. Defendant became upset, screaming that the relationship was over and she needed to leave immediately. The complainant responded that she had already paid her rent for that month and would leave at the end of the month.

¶ 5. The complainant went into the bedroom and began watching a television show on her laptop at low volume. Meanwhile, defendant walked into and out of the bedroom while

2

speaking to one of his parents on his phone about how he could get the complainant to leave the apartment. The complainant rested her cellphone on the keyboard of the laptop and opened its TikTok application. Her phone immediately began playing a video at "full blast." Defendant became upset, thinking it was the laptop, and slammed the laptop shut, damaging its screen.

¶ 6. The complainant used her phone to take a picture of the damaged laptop screen. Defendant started screaming, "Why are you taking a video of me?" The complainant then started recording him so that in the future, she could remember how poorly he treated her. Defendant noticed this and grabbed the phone from her.

¶ 7. Defendant took the complainant's phone into the kitchen to try to delete the video. She followed him. He turned away from her and she tried to reach over his shoulder to get the phone. Defendant put his hands on the kitchen counter and pushed back hard, causing both of them to "go flying backwards." The complainant's back went through a wall, leaving a hole.

¶ 8. Defendant put the complainant's phone in the hallway outside their apartment. When she went out to get it, he unsuccessfully attempted to lock her out. She reentered the apartment and began packing her belongings. Defendant continued to yell at her, so she tried to surreptitiously record him with her phone.

¶ 9. Defendant noticed this and tried to get the phone again. The complainant dropped into a fetal position on the floor, holding the phone against her chest. Defendant grabbed her by her right arm and her hands, trying to pry them open to get the phone. In so doing, he lifted her up and slammed her on the floor twice, causing her head to hit the floor and hurting her. The complainant let go of the phone and defendant threw it, causing it to break.

¶ 10. The State also presented testimony from the police officer who responded to the 911 call. He observed the hole in the wall and interviewed both defendant and the complainant but did not make any arrests. The police chief who interviewed the complainant the day after the

3

incident when she went to request a police escort before returning to the apartment to get her belongings also testified.

¶ 11. Defendant then testified. He admitted that he slapped the complainant's arm when she tried to move his phone away from her ear. He admitted that he had shut the laptop and cracked its screen. He also admitted that he pushed the complainant into the wall behind them when she was trying to get back her phone, and that he subsequently threw the phone. He denied lifting and slamming her into the ground or grabbing her in a manner that would cause bruising.

¶ 12. The jury found defendant guilty of all charges. He received a total concurrent sentence of one-to-three years, all suspended except 120 days to serve, and five years of probation. This appeal followed.

## II. Evidentiary Challenges

¶ 13. We begin by addressing defendant's challenges to the trial court's evidentiary rulings. Defendant argues that the court abused its discretion by admitting the 911 caller's statement to the dispatcher that defendant was beating up the complainant; excluding a statement by the officer who responded to the 911 call that the situation was "a wash"; and failing to strike the complainant's testimony that the police chief had to explain to her that she had been assaulted. "We apply a deferential standard of review to the trial court's evidentiary rulings and will reverse its decision only when there has been an abuse of discretion that resulted in prejudice." State v. Russell, 2011 VT 36, ¶ 6, 189 Vt. 632, 22 A.3d 455 (mem.) (quotation omitted). "In order to support a claim of abuse of discretion, defendant must show that [the court's discretion] was either totally withheld, or exercised on grounds clearly untenable or unreasonable." State v. Chambers, 144 Vt. 377, 381, 477 A.2d 974, 977 (1984). We conclude that defendant has failed to demonstrate reversible error with regard to any of these issues.

### A. 911 Call

4

¶ 14.    Prior to trial, defendant moved to exclude a portion of the 911 call made by a downstairs neighbor in defendant's building.  During the call, the following exchange took place:

> Caller: Upstairs there's a fight in the apartment.  I hear crying and a lot of banging going on and 'You attacked me' and 'I attacked you.' There's a man and a woman up there and she's crying.
>
> Operator: Ok.  Now what's your first name?
>
> Caller: My name is Andrew.  There's a lot of screaming going— hey, I'm calling the cops!
>
> Operator: Sir, sir, I don't need to hear all that.
>
> Caller: I know, but I'd like them to hear.
>
> Operator: What's your first name again?
>
> Caller: Andrew.
>
> Operator: Andrew.  Okay, hang on while we transfer—
>
> Caller: He's beating the shit out of her.

¶ 15.    Defendant moved to exclude the statement "[h]e's beating the shit out of her." Citing Vermont Rules of Evidence 402, 403, and 602, he argued that the 911 caller lacked personal knowledge to make this statement, and the statement therefore lacked probative value and was unfairly prejudicial.  The court heard argument on the motion on the morning of the first day of trial.  It declined to exclude the statement, reasoning that the statement was a present sense impression and could be admitted if the 911 caller was subject to cross-examination.  The court did not discuss the statement's probative value or whether it was unfairly prejudicial.

¶ 16.    Defendant argues that the court erred in admitting the statement because the 911 caller could not see what was happening in defendant's apartment and therefore lacked personal knowledge to opine that defendant was the perpetrator.[1]  See V.R.E. 602 ("The testimony of a

---

[1] The State argues that defendant waived any objection to the admissibility of the statement because after the court indicated that it viewed the statement as a present sense impression, defense counsel replied, "[a]nd if that's what it's going to be, then we'll cross on that. . . . I just wanted to be clear that he didn't . . . see anything."  However, when the State proffered the statement at trial,

5

witness may be excluded or stricken unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter."). Under the circumstances here, we conclude the court did not abuse its discretion in declining to exclude the statement for lack of personal knowledge. The caller's statement is reasonably interpreted as his opinion that the male was beating up the female, based on what he could hear through the walls and his belief that the female sounded scared. It is an opinion rationally based on his perception. See V.R.E. 701 (stating lay witness opinion is limited to "opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical or other specialized knowledge within the scope of Rule 702"); see also V.R.E. 803(1) (providing that "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition" is not excluded by the hearsay rule even if declarant is available to testify). As one court has observed, "[w]e perceive events with our ears as much as with our eyes." United States v. Portsmouth Paving Corp., 694 F.2d 312, 323 (4th Cir. 1982). The fact that the caller witnessed the fight with his ears and not his eyes may have been a basis for giving his statement little weight, but it did not require the statement's exclusion under Rule 602.

¶ 17. Defendant contends that, even if the statement was admissible under Rule 602, it should have been excluded under Rule 402 as irrelevant and under Rule 403 because it was minimally probative and was graphic and disturbing. Defendant failed to properly preserve these objections for our review. "Once the court makes a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal." V.R.E. 103(a)(2). Where the court makes only a

---

defense counsel stated, "[s]ubject to our earlier objection, no other objection." This was adequate to preserve defendant's objection that the caller lacked personal knowledge, although as discussed below, it was insufficient to preserve his other claims.

6

preliminary ruling denying a defendant's pretrial motion to exclude testimony, however, the defendant is obligated to object to the testimony at trial to preserve the objection. State v. Brink, 2008 VT 33, ¶ 7, 183 Vt. 603, 949 A.2d 1069 (mem.). "A denial of a motion in limine seeking to exclude evidence is normally a preliminary ruling that does not mean that the evidence is admissible." State v. Koveos, 169 Vt. 62, 69, 732 A.2d 722, 727 (1999) (quotation omitted). "Even if the partial denial of the motion could be said to be a ruling admitting evidence, a further timely objection was required." Id.

¶ 18.    The trial court never made a definitive ruling on defendant's arguments in his motion in limine that the statement was irrelevant and should be excluded under Rule 403. When the trial court addressed defendant's motion on the first day of trial, it asked, "So [defendant] is arguing that [the] 'he's beating the shit out of her' statement should be redacted because it's his opinion based on what he was hearing?" The State's attorney argued that the statement was admissible as the caller's opinion under Rule 701. The court stated, "I don't know if it's an opinion. I mean, I think it's a present sense impression, isn't it? I mean, it's a statement describing or explaining an event or condition made while the declarant was perceiving the event or condition." Defense counsel argued that the caller did not have personal knowledge that defendant was the perpetrator. The following exchange then took place:

> The Court: Suppose he was blind, and he was in the same room—
>
> Defense counsel: If he said it—
>
> The Court: —would you still be making the same argument?
>
> Defense counsel: If he said sounds like he's—I mean, if that's—if that's—
>
> The Court: Oh, well, isn't that really what he meant?
>
> Defense counsel: And if that's what it's going to be, then we'll cross on that.
>
> The Court: Okay.

7

Defense counsel: I just wanted it to be clear that he didn't perceive—

The Court: He didn't see it.

Defense counsel: —he didn't see anything.

State's attorney: Yeah, and he—

The Court: He did perceive it if he heard it.

Defense counsel: He heard her scream, just please—okay.

The Court: I think I'll—I think it's—I think that can be—the 911 call can be played if he can be cross-examined. It will be up to the jury to sort it out.

¶ 19. Defendant did not assert at any point during the bench conference that the statement was irrelevant.[2] He also did not claim that the statement was inadmissible under Rule 403, and the trial court never assessed the Rule 403 factors. See V.R.E. 403 (stating that otherwise relevant evidence may be excluded by trial court "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence"). Nor did defendant object under Rules 402 or 403 at the time that the State moved to admit the 911 call. Defense counsel stated merely, "Subject to our earlier objection, no other objection." Given that there was no previous discussion of Rules 402 or 403, and the parties instead focused solely on the caller's personal knowledge, defense counsel's statement was insufficient to alert the trial court that he was seeking to exclude the statement on these grounds. See State v. Ben-Mont Corp., 163 Vt. 53, 61, 652 A.2d 1004, 1009 (1994) ("To properly preserve an issue for appeal a party must present the issue with specificity and clarity in a manner which gives the trial court a fair opportunity to

---

[2] To the extent that defendant's personal-knowledge argument can be construed as a relevance objection, we note that evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." V.R.E. 401. The caller's statement tended to support the complainant's allegations; it was therefore plainly relevant and admissible unless excluded by another rule. V.R.E. 402.

8

rule on it."); <u>Brink</u>, 2008 VT 33, ¶ 7 (declining to address argument that trial court improperly admitted testimony where trial court made only preliminary ruling on motion to exclude testimony and defendant did not reassert objection at trial); <u>Koveos</u>, 169 Vt. at 69, 732 A.2d at 727 (holding same); see also <u>State v. Lettieri</u>, 149 Vt. 340, 344, 543 A.2d 683, 685 (1988) ("An objection made on the wrong grounds and overruled below precludes a party from making a different objection on other, tenable grounds on appeal."). Because he does not argue plain error, we do not address his arguments. See <u>State v. Hinchliffe</u>, 2009 VT 111, ¶ 34, 186 Vt. 487, 987 A.2d 988 (declining to address claim first raised on appeal absent plain-error argument).

### B. Statement by Responding Officer

¶ 20. Before trial, the State moved to exclude the responding officer's testimony that he did not arrest defendant on the day of the incident because he believed defendant was acting in self-defense and there was not enough evidence to arrest either defendant or complainant for assault. The State argued that the officer was not qualified to express these opinions, which were irrelevant and misleading. Defendant responded that he did not intend to present testimony about the officer's apparent legal conclusions but argued that he should be allowed to introduce evidence that the officer came to the residence on the night of the incident, investigated, and did not make any arrests because his impression was that the situation was "a wash." After hearing argument on the motion, the court ruled that defendant could introduce evidence that the officer did not make an arrest but that it would exclude the officer's statement about the situation being a wash. The court explained that the statement was essentially a prediction about the prosecutor's charging decision, and the officer was not qualified to give an opinion on that subject.

¶ 21. The court acted within its discretion in excluding the officer's statement. The statement could be interpreted as an opinion that defendant was not guilty, which was a matter for the jury to decide. See <u>State v. Gokey</u>, 154 Vt. 129, 140, 574 A.2d 766, 771 (1990) (explaining that credibility of witnesses and guilt or innocence of defendant "are matters, in our system of

criminal law, that are reserved for the jury"); see also United States v. Freeman, 730 F.3d 590, 597 (6th Cir. 2013) ("A witness, lay or expert, may not form conclusions for a jury that they are competent to reach on their own."); Town of Brighton v. Griffin, 148 Vt. 264, 271, 532 A.2d 1292, 1296 (1987) (stating that "[a]s a general rule, a witness may not give his opinion on questions of law"). Further, if the opinion were admitted, the jury might have been unduly influenced by the officer's position as a member of law enforcement. See Freeman, 730 F.3d at 598 (stating that law enforcement officer testifying as lay witness may not explain to jury what inferences to draw from evidence that is within jury's competence to understand and decide); United States v. Hampton, 718 F.3d 978, 981-82 (D.C. Cir. 2013) ("Judicial scrutiny of a law-enforcement witness's purported basis for lay opinion is especially important because of the risk that the jury will defer to the officer's superior knowledge of the case and past experiences with similar crimes."). Under these circumstances, we see no error in the court's ruling.

### C. Complainant's Testimony

¶ 22. Defendant also argues that the court erred by failing to exclude a portion of the complainant's testimony. During cross-examination, defense counsel attempted to impeach the complainant about her statement that she had a "raging headache" after the incident, which appeared to conflict with her statement to the responding officer that she was "okay." The complainant responded, "They're both true. When I was talking to [the police chief], he had to explain to me that I had been assaulted. I didn't even know what it meant. I didn't even know what happened. But I was in such shock." Defendant argues that the trial court should have stricken this statement sua sponte because it was hearsay and, like the responding officer's opinion, could have unduly influenced the jurors.

¶ 23. Defendant did not ask the trial court to strike the testimony, request a curative instruction, or move for a mistrial. As we have noted elsewhere, "defense counsel bears some responsibility to inform the court if he or she feels corrective action is necessary in order to cure

10

an error." State v. Turner, 145 Vt. 399, 403, 491 A.2d 338, 340 (1985). Not only did defense counsel not object to the complainant's statement, he went on to ask her, "and [the officer] had to explain to you that you were assaulted?" Defense counsel also reiterated the statement during closing argument to support his argument that the complainant had exaggerated or lied about the assaults. Defendant acknowledges that he failed to object to the testimony below but argues that the trial court's failure to strike the statement was plain error. State v. Leroux, 2008 VT 104, ¶ 12, 184 Vt. 396, 965 A.2d 495. "This Court will find plain error only in rare and extraordinary cases." Turner, 145 Vt. at 403, 491 A.2d at 340. To reverse for plain error, defendant must demonstrate three factors: "First, there must be an error; second, the error must be obvious; and third, it must affect substantial rights and result in prejudice to the defendant." State v. Koons, 2011 VT 22, ¶ 11, 189 Vt. 285, 20 A.3d 662 (quotation omitted).

¶ 24. We conclude that the admission of the complainant's statement does not meet this standard. Assuming there was error, defendant has not shown that it struck at the heart of his constitutional rights or resulted in prejudice. The statement was not obviously harmful to defendant, as shown by defendant's reliance on it during closing argument. Moreover, as discussed above, there was ample other evidence to support the assault charges, including the complainant's testimony, the photos of the hole in the wall and the complainant's bruises, and defendant's admissions that he slapped the complainant's arm and pushed her into the wall. See State v. Burgess, 2007 VT 18, ¶ 9, 181 Vt. 336, 917 A.2d 528 (explaining that if wrongly admitted evidence is cumulative, error is harmless beyond a reasonable doubt). Viewed in light of the evidence as a whole, the court's failure to sua sponte strike the statement or take other curative action was not plain error.

### III. Double Jeopardy

¶ 25. Defendant was convicted of three counts of domestic assault for slapping the complainant on her arm, causing her to go through a wall, and hitting her head against the ground.

11

Defendant argues that his convictions for the latter two counts violated the prohibition against double jeopardy because the conduct underlying both counts was a single, continuous criminal act. Defendant concedes that he did not raise this issue below and therefore our review is for plain error only.

¶ 26.    The Double Jeopardy Clause of the Fifth Amendment to the U.S. Constitution provides that a criminal defendant shall not be subjected to multiple punishments for the same offense. State v. Neisner, 2010 VT 112, ¶ 11, 189 Vt. 160, 16 A.3d 597; see U.S. Const. amend. V (stating that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb"); Benton v. Maryland, 395 U.S. 784, 794 (1969) (holding that Double Jeopardy Clause applies to states through Fourteenth Amendment). "Among other things, the Double Jeopardy Clause prohibits the State from dividing a single criminal act into multiple counts of the same offense." State v. Abel, 2019 VT 22, ¶ 10, 210 Vt. 1, 210 A.3d 439 (quotation omitted).

¶ 27.    When a defendant asserts that the State has violated this so-called multiplicity doctrine, this Court "engage[s] in a fact-intensive inquiry to determine if a defendant's actions are sufficiently separate in time and location to constitute distinct acts." Id. ¶ 11 (quotation omitted). In analyzing whether an assault constitutes one continuous act or multiple acts, we have considered:

> the elapsed time between successive parts of the defendant's conduct; whether the defendant's conduct occurred in more than one geographic location; whether an intervening event occurred between successive parts of the defendant's conduct; [and] whether there was sufficient time for reflection between assaultive acts for the defendant to again commit himself.

State v. Fuller, 168 Vt. 396, 400, 721 A.2d 475, 479 (1998); see also Abel, 2019 VT 22, ¶ 13 (applying Fuller factors to domestic-assault charges). "The critical inquiry is whether the temporal and spatial separation between the acts supports a factual finding that the defendant formed a separate intent to commit each criminal act." Abel, 2019 VT 22, ¶ 11 (quotation omitted).

12

¶ 28.   In State v. Abel, the defendant argued that his conviction of two domestic assault charges violated the Double Jeopardy Clause because the charges were based on a single, continuous assault.  In that case, the complainant testified that the defendant shoved her while she was holding their youngest child, causing her to fall.  The complainant then moved a highchair from the kitchen into a bedroom and put the child in it, while the defendant called the school to say that the children would be absent.  The defendant then hit the complainant and put his hands around her neck.  We held that the defendant's acts of shoving the complainant to the floor and hitting her could be charged as two separate offenses because although they occurred close in time and in the same geographic location, the continuity was interrupted when the complainant moved the highchair and the defendant called the school.  Id. ¶ 16.  We concluded that "[t]his interval provided [the] defendant sufficient time to reflect on his conduct and recommit himself to abusing the victim."  Id. (quoting Fuller, 168 Vt. at 401, 721 A.2d at 480).

¶ 29.   We reach the same conclusion in this case.  Here, the State presented evidence that after defendant pushed the complainant backwards into the kitchen wall, he put her phone outside the apartment.  She went outside to get it, and he tried to lock her out.  She then convinced him to let her back in and began packing her belongings.  He yelled at her, and she attempted to record him, causing him to go after her phone.  While she lay in a fetal position in the living room, he picked her up and dropped her, causing her head to hit the floor.  The total amount of time that elapsed between the two charged acts is unclear.  However, taken in the light most favorable to the State, this evidence shows that the acts occurred in two different locations—the kitchen and the living room—and were interrupted by defendant's act of putting the complainant's phone outside.  This break in the action provided defendant time "to reflect on his conduct and recommit himself to abusing the victim."  Id.  There was accordingly sufficient evidence for the court to submit both counts to the jury and for the jury to find that there were two separate assaults.  Id. ¶ 17; see also Fuller, 168 Vt. at 400-01, 729 A.2d at 479-80 (holding evidence that defendant

performed oral sex on child victim for five to ten seconds before victim was able to escape and run into living room, and that defendant followed victim, threw him on couch, and again performed oral sex, was sufficient to support charge of aggravated sexual assault, which requires proof of "repeated nonconsensual sexual acts"). We therefore find no error, let alone plain error.

IV. Jury Instruction on Unlawful Mischief Charge

¶ 30. Defendant argues that the court improperly instructed the jury on the intent element of unlawful mischief by stating the jury could find him guilty if it found he acted knowingly. Because defendant did not object to the jury instruction, we review this issue for plain error as well. State v. Vuley, 2013 VT 9, ¶ 40, 193 Vt. 622, 70 A.3d 940.

¶ 31. Defendant was charged with felony unlawful mischief for damaging the complainant's property. The unlawful-mischief statute requires the State to prove that defendant acted "with intent to damage property." 13 V.S.A. § 3701(a). The court instructed the jury as follows:

> The second essential element is that [defendant] acted with an intent to damage property. A person acts intentionally if the person acts purposely or knowingly and not by mistake, inadvertence, or accident. You may find that [defendant] acted purposely if it was his conscious objective to damage the property. You may find that [defendant] acted knowingly if he was aware that his conduct would, or was practically certain, to damage the property.

¶ 32. When reviewing jury instructions, we look to "whether the instructions as a whole were misleading or inadequate to aid the jury's deliberations." State v. Shabazz, 169 Vt. 448, 450, 739 A.2d 666, 667 (1999). "Error will be assigned only when the entire charge undermines our confidence in the verdict, and only in extraordinary cases will we find plain error." State v. Brooks, 163 Vt. 245, 250, 658 A.2d 22, 26 (1995).

¶ 33. We conclude that this is one of those rare cases because the instruction allowed the jury to find a lower standard of intent than required by the statute. We previously addressed a nearly identical situation in State v. Jackowski, 2006 VT 119, 181 Vt. 73, 915 A.2d 767. There,

14

we reversed a defendant's conviction for disorderly conduct because the trial court improperly instructed the jury to consider whether the defendant was "practically certain" that her conduct would cause public inconvenience or annoyance. Id. ¶ 1. The statute under which the defendant was charged, 13 V.S.A. § 1026, required proof that she acted "with intent to cause public inconvenience and annoyance." We explained that § 1026, like other criminal statutes, "was revised by the Legislature in 1972 to adopt the Model Penal Code's approach to mens rea, which distinguishes among crimes that are committed 'purposely,' 'knowingly,' and 'recklessly.' " Jackowski, 2006 VT 119, ¶¶ 5-6. "Under this approach, a person acts 'purposely' when 'it is his conscious object to engage in conduct of that nature or to cause such a result.' A person acts 'knowingly' when 'he is aware that it is practically certain that his conduct will cause such a result.' " Id. ¶ 5 (quoting Model Penal Code § 2.02(2)(a)-(b)). Under the Model Penal Code, "with intent" is equivalent to "purposely." Id. ¶ 6 (citing Model Penal Code § 1.13(12)). Because the disorderly conduct statute required proof that the defendant acted "with intent," we held that it was error for the court to instruct the jury that the mens rea element could be satisfied if it found the defendant was "practically certain" that her actions would cause public inconvenience or annoyance, because this was the lower "knowingly" standard. Id. ¶ 7.

¶ 34. The intent element of the unlawful mischief statute is identical to that of the disorderly conduct statute. Compare 13 V.S.A. § 3701(a) (requiring State to prove defendant acted "with intent to damage property"), with id. § 1026 (requiring State to prove defendant acted "with intent to cause public inconvenience or annoyance"). Both statutes were revised by the Legislature in 1972 to adopt the Model Penal Code approach, and both require proof that the defendant acted "with intent," meaning purposely. See 1971, No. 222 (Adj. Sess.), § 6 (adopting current version of 13 V.S.A. § 3701); id. § 5 (adopting modern version of 13 V.S.A. § 1026). The trial court therefore erred in instructing the jury that it could find the requisite intent for unlawful mischief if it found that defendant acted knowingly.

¶ 35. The State concedes that the instruction was erroneous but argues that the error was harmless because defendant conceded that he threw the complainant's phone, which was worth more than $1000, and that the phone broke. "Under the harmless error standard, we may find a constitutional or nonconstitutional error harmless only if we can state a belief that the error was harmless beyond a reasonable doubt." Jackowski, 2006 VT 119, ¶ 8. We cannot do so here.

¶ 36. "A defendant's judicial admission of the facts of a crime does not necessarily represent an admission that he acted criminally or culpably." State v. Camley, 140 Vt. 483, 488, 438 A.2d 1131, 1134 (1981). Defendant admitted that he threw the phone but denied that he did so in order to break it. Similarly, defendant testified that he shut the laptop because he "wanted the noise to stop," and that he "felt horrible" when he realized the screen had cracked and offered to pay for the damage. His intent was therefore the central disputed issue for this charge.

¶ 37. As in Jackowski, the trial court essentially told the jury that it could presume defendant acted with intent to damage property if it found that defendant was "practically certain" that such damage would occur. "The instruction may have led the jury to ignore any evidence of defendant's intent and to convict solely based on [his] knowledge." Jackowski, 2006 VT 119, ¶ 9. This was analogous to a directed verdict for the State. See id. ¶¶ 8-9; State v. Boise, 146 Vt. 46, 48, 498 A.2d 495, 496 (1985) (holding that erroneous instruction to jury that element of crime had been conceded was not harmless because instruction "removed an element from the jury's consideration"). Where, as here, defendant's intent was the central element at issue, and the trial court's instruction suggested that knowledge was sufficient to satisfy that element, we cannot conclude the error was harmless beyond a reasonable doubt. We therefore reverse defendant's conviction on the unlawful-mischief count.

¶ 38. Because we reverse the unlawful-mischief conviction on this basis, we do not reach defendant's arguments that there was insufficient evidence that defendant intended to damage the laptop such that the laptop should not have been included in the unlawful-mischief count, and that

he was not provided sufficient notice that damage to a book of cocktail recipes would be included in the unlawful mischief count.

Defendant's unlawful-mischief conviction is reversed and remanded for a new trial. His convictions are otherwise affirmed.

FOR THE COURT:

_____

Associate Justice